STATE OF MINNESOTA ex rel. H. D. MINCES v. L. SCHOENIG.

June 9, 1898.

Nos. 11,219—(256).

### City of Winona—Ordinance—License for Bankrupt Sales.

An ordinance of the city of Winona provides for licensing the conductors of "gift, fire and bankrupt sales," and for taxing them two per cent. of the amount of the gross receipts of their sales. *Held*:

### Tax Invalid—Const. art. 9, § 1.

(1) That the provisions for taxation are void, because in conflict with section 1 of article 9 of the constitution of the state; but their invalidity does not affect the validity of the provisions for licensing, the two being severable and independent.

### Police Power.

(2) That it is within the police power of the state to require licenses for conducting "gift, fire and bankrupt sales."

### Amount of License Fee.

(3) In view of the brief and transient character of such business at any one place, the court cannot hold that $25 per month is an unreasonable license fee.

### Same—Term of License—Divisibility.

(4) The city council is not required to grant an applicant a license for a portion of a month at a proportionate part of $25.

### Same—Discrimination between Applicants—Discretion.

The ordinance provides that the city council may, in its discretion, direct that a license shall be issued to an applicant who shall pay the required fee. *Held*, that this must be construed, not as giving the council an arbitrary discretion to discriminate between applicants without good cause or to refuse to grant any licenses in order to destroy or prohibit the

business, but merely a reasonable discretion, honestly exercised, to refuse a license where the applicant is an unfit person to whom to issue one, and that, thus construed, this provision of the ordinance is valid.

Writ of habeas corpus issued from the district court for Winona county, and directed to the chief of police of Winona. From an order, Snow, J., remanding relator to the custody of respondent, relator appealed. Affirmed.

*Jas. A. Manly,* for appellant.

*George T. Simpson,* for respondent.

MITCHELL, J.

The petitioner, having been arrested upon a warrant issued upon a complaint for a violation of an ordinance of the city of Winona, entitled "An ordinance to provide for the licensing of conductors of gift, fire and bankrupt sales, to regulate their manner of doing business, and to tax the proceeds of their sales," sued out of the district court of Winona county a writ of habeas corpus. Upon the hearing the court remanded the petitioner to the custody of the officer holding the warrant, and he thereupon appealed to this court. The sole question in the case is the validity of the ordinance. By the charter of the city of Winona, the city council is given power

"To provide for the licensing of auctioneers, peddlers, junk dealers, pawnbrokers, conductors of gift, fire, auction or bankrupt sales, and transient merchants, to regulate their manner of doing business and to tax their goods or the proceeds of their sales." Sp. Laws 1887, c. 5, subc. 4, § 3, subd. 5.

The ordinance is not contained in the record, but, as the district court of Winona county is required to take judicial notice of all ordinances of the city of Winona, this court will do so on appeals from that court. The ordinance contains two sets of provisions,—one relating to licensing the conductors of gift, fire, and bankrupt sales, and the other providing for payment by them of a tax of two per cent. of the amount of the gross receipts of their sales. This mode of taxation is so palpably in violation of section 1 of article 9 of the constitution, which requires that "all property on which taxes are to be levied shall have a cash valuation," that it cannot stand for a moment. The legislature itself has no power to adopt any such

72 M.—34

system or taxation, or to grant authority to a municipality to do so.

But the provisions relating to licensing are severable from and independent of those relating to taxation, so that the invalidity of the latter does not render the former invalid. The rule in that regard as to a municipal ordinance is the same as applies to a statute enacted by the legislature. The first section prohibits any one from advertising or conducting a gift, fire, or bankrupt sale without first obtaining a license to do so. The second section provides that any person desiring to advertise or conduct any such sale shall make written application to the city council for a license stating the place where the sale is to be conducted, the kind of merchandise desired to be sold, and the length of time for which he wishes to obtain a license. The third section reads as follows:

"The city council may, in its discretion, direct that a license be granted and issued to such applicant upon his paying to the city treasurer the sum of $25 for each month for which he shall apply for such license, such sum being hereby fixed as the license fee to be charged under the provisions of this ordinance."

1. We have no doubt that it is as much within the police power of the state to require licenses for conducting "gift," "fire," and "bankrupt" sales as it is to require licenses from pawnbrokers, peddlers, keepers of junk shops, ticket scalpers, keepers of loan offices, and the like. This class of sales now has a well-defined and well-understood meaning. They are usually conducted by transients and strangers, who stay only a short time in one place, who are sometimes honest men but often sharpers, who may deal honestly, but who often and even generally sell shoddy and inferior goods, and who attract trade by falsely representing that their goods are being sold at a great sacrifice, because they have been somewhat injured by fire, or because the owners are bankrupt, or by luring ignorant people to buy by the promise to distribute gifts to purchasers. They frequently practice frauds on the public, but because of their transient character they are gone before the fraud is discovered. The goods are usually sold at auction. It is a business which is legitimate if honestly conducted, but which, by reason of its peculiar character, is liable to become the means of perpetrating fraud and imposition on the public. The regulation of such a busi-

ness by license and other legitimate means is therefore within the police power of the state.

2. In view of the character of the business, and the comparatively short time it is usually carried on at one place, we cannot hold that $25 a month is an unreasonable fee. It does not follow that, because $300 a year might be unreasonable, $25 a month would be. Neither is there anything in the point that the ordinance delegates to the licensee the power to determine the duration of the license. In re White, 43 Minn. 250, 45 N. W. 232.

3. Nor is there anything in the point "that the license fee is not apportioned to the time, and is therefore not uniform." By this we suppose counsel means that, if an applicant only wanted a license for one day or a few days, he would have to take a license for a full month, and pay $25. The city council is not required to issue licenses to run the exact length of time that each different applicant may desire. It is within the power of the municipality to fix a uniform, reasonable term for which all licenses shall run, and if a party desires a license at all, he must take it on those terms. It is usual in the case of a permanent business to fix the term of licenses at one year; but in this case the city council, recognizing the brief and transient character of gift, fire, and bankrupt sales as usually conducted, has given applicants the privilege of taking out a license for a single month; and they have no reason to complain, because it has not given them the further privilege of taking out a license for a day or a week at a proportionate fee.

4. It is also urged that the ordinance was not designed as a legitimate exercise of the police power, for the reason that it contains no police regulations as to the manner of conducting the business. The provisions of the ordinance in that respect are somewhat meager, but the very fact that a license is required tends to exclude dishonest or otherwise unfit persons from conducting such sales; and the further fact that the licensee is required to state the place where the business is to be conducted enables the city to keep such sales under strict police surveillance, and see that they are honestly conducted. We do not think that this objection to the validity of the ordinance is well taken.

5. The only other objection that need be considered is based on

the language of the third section, viz.: "The city council may in its discretion direct that a license be granted and issued."

It is urged that this authorizes the city council arbitrarily to discriminate between applicants by granting a license to one and refusing it to another without any good reason, or to prohibit the business altogether by refusing to issue any licenses at all. If this is the necessary meaning and effect of the ordinance, it is clearly invalid; for a power to license and regulate is not a power to prohibit or destroy this business, or a power to discriminate between citizens arbitrarily and without good cause. But granting or refusing a license always involves the exercise of a reasonable discretion in determining whether the applicant is or is not a fit person to whom to issue a license.

A city council is not absolutely bound to issue a license to conduct such sales to every applicant, regardless of his character, who will pay the required fee. If the applicant is notoriously dishonest, or in the habit of resorting to fraudulent tricks and devices in conducting sales, the city council would be justified in refusing him a license. The power to grant licenses implies the power to refuse to do so for good cause. If they should arbitrarily, and not in the honest exercise of a sound discretion, refuse to grant a license for the purpose either of discriminating between citizens, or of prohibiting the business altogether, no doubt the aggrieved party would have his legal remedy. But, as in the case of an act of the legislature, so in the case of a municipal ordinance, every presumption is in favor of its validity. Hence, if it is susceptible of two constructions, that one must be adopted which will sustain the ordinance. Indeed, in many cases the courts will, if necessary in order to sustain a statute or ordinance, cut down its language below its ordinary and natural meaning. Under this rule, we think this ordinance should be construed as merely giving to the city council that reasonable discretion which they would have possessed in any event.

Order affirmed.