## STEWART v. OKLAHOMA TAX COMMISSION.

No. 32374. April 16, 1946.

*168 P. 2d 125.*

Murray F. Gibbons, of Purcell, for plaintiff in error.

E. L. Mitchell and W. F. Speakman, both of Oklahoma City, and E. J. Armstrong, of Sallisaw, for defendants in error.

CORN, J. This is an appeal from an order of the Oklahoma Tax Commission denying plaintiff's application for license to sell nonintoxicating beverages (3.2) beer at retail, in original packages, for consumption on or off the premises.

August 18, 1944, plaintiff applied for a license to sell beer from premises located at 625 N. E. 23rd street, Oklahoma City, Okla., under the provisions of 37 O.S. 1941 § 162(e), subs. C. License was issued and plaintiff engaged in such business until June 30, 1945, and on that date applied for renewal of license. July 26, 1945, defendant entered an order denying the application, but such order was vacated and rehearing granted plaintiff. Upon further hearing, defendant, on October 2, 1945, entered its order denying the application, and plaintiff has appealed. Further pertinent facts are contained in the stipulation of the parties, which was as follows, omitting the formal parts:

"It is further agreed by and between the parties hereto, that the premises where beer is to be sold under license application for years 1944 and 1945, is located on the back of Lot 14 and in Block 43, Lucile's Addition to the City of Oklahoma City; that said building is the property of Harry B. Stewart, and that the said Harry B. Stewart holds a lease upon a portion of said Lot 14 upon which the building known as Stewart's Taproom, known now as Stewart's Speakeasy is located; that Lots 15 and 16 of said Block and lying immediately east of Lot 14, is owned by the Oklahoma Railway Company; that Lots 17, 18, 19, 20 and 21 in said block of said addition lying immediately east of the vacant lots heretofore described are owned or controlled by Jake Samara, and upon which is located the place known as Jake's Cow Shed is managed by one Humphrey, and that the profits made from the Speakeasy go entirely to the said Jake Samara and a portion of the profits derived from the operation of the property known as Jake's Cow Shed goes to Jake Samara.

"That Jake's Cow Shed is a place where public dancing is conducted and permitted as described in House Bill 198 Enacted by the Nineteenth Legislature of the State of Oklahoma, and that in addition thereto it is operated as a Night Club wherein meals are served and floor shows are presented; that spectators are not permitted, unless they are patrons and a cover charge is made. A true and correct photograph of the premises herein described is hereto attached and marked Exhibit 'B' and made a part hereof.

"That the west edge of the driveway shown in said Exhibit is the east property line of the vacant lots heretofore described; that said driveway is approximately ten or twelve feet in width; that there is a distance of fifty feet from the west edge of the driveway to the east property line of Lot 14 whereon the premises known and described as Stewart's Taproom and Stewart's Speakeasy is located.

"That there is a cement walk running from the place known as Stewart's

Speakeasy across Lots 15 and 16 to the driveway lying just west of the building known as Jake's Cow Shed.

"That the cost of construction of said sidewalk was paid by said Humphrey in his capacity as manager of the Stewart's Speakeasy and Jake's Cow Shed.

"It is further stipulated and agreed, by and between the parties hereto, that the applicant, Harry B. Stewart has fully and completely complied with the statutory requirements as set forth in Title 37, Article 162 e (c) Oklahoma Statutes 1941, and that applicant has fully and completely complied with the provisions of Title 37, Article 162 (h), Oklahoma Statutes 1941, and is not disqualified thereunder; that applicant has not violated regulations issued by the State Tax Commission as pertaining to persons operating under license permitting the retail sale of nonintoxicating liquors.

"That the applicant bears a good reputation and is of good moral character."

In seeking reversal of the order appealed from plaintiff presents three propositions, the second of which is:

"Title 37, Art. 211 to 218, Oklahoma Statutes, 1943 Supplement (H.B. 198, S.L. 1943, pp. 108-109) is unconstitutional, being in conflict with the provisions and requirements of Art. 5, Sec. 57, of the Constitution of the State of Oklahoma."

The Title of House Bill 198, Session Laws 1943, chap. 2, p. 108, is as follows:

"An Act prohibiting the sale of beverages containing more than one-half of one per cent (½ of 1%) alcohol by volume and not more than three and two-tenths per cent (3.2%) alcohol by weight on premises wherein public or private dancing is conducted or permitted, and within one thousand (1,000) feet of such premises outside the limits of any incorporated city or town; fixing closing hours for the sale of such beverages: making it unlawful to open a dance hall after the effective date of this act within specified distances of any place where such beverages are sold for consumption on the premises; restricting the issuance of license for the sale of such beverages in said locations; making exceptions thereto; providing penalties; and providing for an effective date of this Act; and declaring an emergency."

Section 1 of the act provides:

"From and after the effective date of this Act, and subject to the provisions of Section 6 hereof, it shall be unlawful for any person, firm, co-partnership, association, or corporation to sell or otherwise dispense beverages at retail containing more than one-half of one per cent (½ of 1%) of alcohol by volume and not more than three and two-tenths per cent (3.2%) of alcohol by weight, on premises wherein public or private dancing is conducted or permitted, whether said dancing is under the same or different ownership and management. For the purpose of this Act the word 'premises' shall mean and include the real property or building, and any adjoining property connected thereto by any private passageway, on or in which such dancing is conducted or permitted."

It is plaintiff's contention that the title to this bill is not broad enough, either by the language or by implication, to cover what plaintiff asserts is a new and unusual definition of the word "premises" as used in section 1 of the bill. Article 5, sec. 57, of the Constitution provides that:

"Every act of the Legislature shall embrace but one subject, which shall be clearly expressed in its title . . .: Provided, that if any subject be embraced in any act contrary to the provisions of this section, such act shall be void only as to so much of the law as may not be expressed in the title thereof."

Plaintiff's theory is that an unusual meaning is given to the word "premises," and nothing is contained in the title of the act to give notice that this word is to have any but its usual meaning. From this plaintiff urges that the failure of the title of the bill to show that the word "premises" was to have a special meaning renders that portion of the act, supra, fatally defective.

Supporting this argument plaintiff cites certain decisions from this court holding that the title of a bill may be general and not specify every clause in the act if they are cognate to the subject expressed; and when the subject is expressed in general terms, everything necessary to make a complete enactment is included in it. But where an act contains clauses not so related to the subject expressed in the title as to naturally follow, such clauses cannot stand. Citing City of Pond Creek v. Haskell, 21 Okla. 711, 98 P. 338, and Holcomb v. Chicago, R. I. & P. Ry. Co., 27 Okla. 667, 112 P. 1023; State ex rel. Short, Atty. Gen., v. Johnson et al., 90 Okla. 21, 215 P. 945; Board Com'rs v. Giddings, 159 Okla. 103, 14 P. 2d 418.

We do not believe the construction urged by plaintiff obtains herein. In 59 C.J., § 393, p. 812, the rule as to matters covered by the title of an act is stated:

". . . All matters, however, which are germane to, and naturally connected with, the subject announced by the title of an act and not excluded thereby are covered by it and may validly be included in the statute; *and for the purpose of determining whether or not a provision is germane to the title a reasonable meaning should be given to the words and context of the provision.*"

We have repeatedly held to the effect that the title of a statute may be general and does not need to contain an abstract of the contents or specify each clause, it being sufficient if such clauses are referable and cognate to the subject expressed. Oklahoma City v. Grigsby, 171 Okla. 23, 41 P. 2d 697; Dowell v. Board of Education, 185 Okla. 342, 91 P. 2d 771. Nor is the constitutional provision to be applied so as to cripple legislation. Lowden v. Luther, 190 Okla. 31, 120 P. 2d 359, and cases therein cited. And, where the title calls attention to the general subject, there is no need of expressing the details or subdivisions in the title. National Mut. Casualty Co. v. Briscoe, 188 Okla. 440, 109 P. 2d 1088. Also, see John Deere Plow Co. v. Owens, 194 Okla. 96, 147 P. 2d 149, holding the purpose of the constitutional provision is to inform the public of the scope of pending legislation and to avoid fraud or surprise upon the members of the Legislature.

The title of the act in question (H.B. 198, Sess. L. 1943, chap. 2, p. 108) mentions "premises" three times. The final sentence in section 1 defines the meaning of "premises," insofar as the purposes of the act are concerned. In view of the mention made in the title concerning the handling of the beverages on certain premises, it cannot be said that a definition of the meaning of the term as contemplated in the act itself is not referable and cognate, is not germane, and has no relation to the matters expressed in the title of the act.

Plaintiff further contends the denial of the license, under the circumstances, constitutes an abuse of the discretionary power vested in the Tax Commission pursuant to the provisions of 37 O.S. 1941 § 162 (e), subs. c, the pertinent portion of said statute being as follows:

". . . Permits shall be issued and renewed in the discretion of the Tax Commission upon full compliance with the provisions of this act by the applicant. . . ."

Plaintiff urges that the *discretion* mentioned in the statute is a legal or judicial discretion, and not an absolute discretion, or the power to exercise an arbitrary will in such matters. Plaintiff says the commission's refusal of the license, not being based upon any stated grounds, was an arbitrary abuse of the discretion conferred by the statute.

The term "discretion" denotes the absence of a hard and fast rule, and when it is invoked as a guide to judicial action means "sound discretion"; this is held to mean a discretion not exercised willfully or arbitrarily, but with a regard to what is right and equitable under the circumstances. Cornwell v. Cornwell, 118 F. 2d 396; The Styria,

22 S.Ct. 731, 186 U.S. 1, 46 L.Ed. 1027. Discretion is said to imply the knowledge, prudence, and discernment enabling a person to judge critically what is right and proper. Merritt School Dist. v. Kimm (Wash.) 157 P. 2d 989.

We recognize, as pointed out by plaintiff, that we have held that what constitutes abuse of discretion depends upon the circumstances surrounding each case. Boez v. Martin et al., 101 Okla. 243, 225 P. 516. Also, that this court will review the record to determine whether there has been an abuse of discretion. State ex rel. Reirdon et al. v. County Court, etc., 183 Okla. 274, 81 P. 2d 488.

We are of the opinion that the act giving the commission the authority to exercise its discretion in the granting and renewal of license contemplated the commission's exercising such discretion in every instance. Were this not true, no reason would exist for the Legislature having mentioned this subject at all. The matter would have been settled in that it would have been mandatory upon the commission to issue a license to any person meeting the qualifications set up in the statute, without consideration of any surrounding and attendant circumstances. If, as in effect contended by plaintiff, the commission has no discretion in this matter upon a showing of compliance with the statutory requirements, the commission has no function but to issue a license in such instance, irrespective of any other consideration. Such is not our understanding of the intention of the statute.

Plaintiff's final proposition is that plaintiff's application is not in conflict with or prohibited by 37 O.S. Supp. 1943 §§ 211-218. The basis of the argument in support of this contention is that under section 1 of the act, heretofore set out, it cannot be shown that plaintiff's place of business is "adjoining property" and connected by a "private passageway."

In 2 C.J.S. p. 1, "adjoining" is defined as contiguous, in contact with, or having a common boundary—"but this is not necessarily the meaning of the word in all connections, and the word may be employed as meaning adjacent, close, or near to, or nearest or most accessible. The meaning of the word as employed in a particular case must be gathered from the context, the intention and the particular circumstances under which it is used." Further," . . . the term has also been construed as not absolutely precluding the idea of separation by some object intervening, and the question as to what amount of separation will or will not deprive premises of the character of adjoining premises within the meaning of that term depends upon the circumstances of each particular case."

The physical facts as reflected by the stipulation of the parties and the exhibit in the record are sufficient to establish that the premises in question are "adjoining" within the contemplation of the statute.

This conclusion leaves for consideration only whether the adjoining premises are connected by a "private passageway" as mentioned in the statute. Plaintiff urges that the walk in question cannot, under any accepted definition, be considered a private passageway, and says this is true because the walk in question is exposed to view and is open to all passersby, and publicly known.

A private passageway implies a way of convenience for persons engaged in common or related activities in a particular area. The proximity of the two establishments mentioned in the stipulation, the obvious ease of access over this sidewalk without necessity of resorting to the dedicated public roads and streets, coupled with the obvious fact that, although the walk is nominally open to the traveling public, there is no occasion for any person to travel there except for the carrying on of transactions envisioned by the proprietors in originally constructing such a passageway, impels us to conclude this walk is a "private passageway" as con-

680

templated by the statute.

The order refusing to renew plaintiff's license was correct and the judgment is affirmed.

OSBORN, BAYLESS, WELCH, and DAVISON, JJ., concur. HURST, V.C.J., concurs in result.