STATE EX REL. GOPHER SALES COMPANY v. CITY OF AUSTIN AND OTHERS.[1]

March 9, 1956.

No. 36,760.

---

[1]Reported in 75 N. W. (2d) 780.

*McMillan & Dobbs,* for appellant.
*Rodney A. Dunnette,* for respondents.

DELL, CHIEF JUSTICE.

This is an appeal from a summary judgment entered in the District Court of Mower County quashing an alternative writ of mandamus previously issued by said court.

The petitioner, Gopher Sales Company, is a corporation. Its business includes the ownership of mechanical amusement devices, pinball machines, and other novelty machines. For 19 years prior to July 1, 1955, it was granted a yearly owner's license by the City Council of Austin for 30 pinball machines; and for 11 years prior to that time it was engaged in the business of owning and operating such machines in the city of Austin, no license having been required during that 11-year period.

Under the Austin city ordinance, an owner's license required for pinball machines commences as of July 1 each year and terminates on June 30 of the following year. Prior to June 30, 1955, petitioner made written application to the city council for an owner's license for the year ending June 30, 1956, for 30 pinball machines, accompanied by a check for the annual license fee. At a city council meeting held on June 21, 1955, petitioner was permitted to speak for approximately 40 minutes in behalf of its application for the license

which it sought. Other applications for pinball machine owner's licenses were received by the council from the Austin Sales Company and from Richard Jelinek, and they were at that time also permitted to speak before the council in behalf of their respective applications. After hearing the applicants, the city council went into executive session for approximately 20 to 30 minutes, from which session the public was barred. It thereafter resumed for its regular order of business and granted the application of the Austin Sales Company for an owner's license for 70 pinball machines and voted to table the application of the Gopher Sales Company and that of Richard Jelinek.

At a subsequent city council meeting held on July 1, 1955, the matter of granting an owner's license for the 30 additional pinball machines permitted under the city ordinance came up again for consideration. Petitioner was again given an opportunity to and did speak in behalf of its application for a license. After another closed executive session lasting approximately one hour, the council, in regular session, voted, by a three to two majority, to grant an owner's license for the remaining 30 pinball machines to the Austin Sales Company. No reason or explanation was given by the council for its action.

On the petition of appellant an alternative writ of mandamus was issued by the district court, directed to the city, its mayor, clerk, and council, as defendants, ordering them to grant petitioner's application for an owner's license or to show cause why that should not be done. Defendants answered requesting that the alternative writ of mandamus be dismissed and quashed. Thereafter they moved that summary judgment be entered in their favor quashing the alternative writ of mandamus, and petitioner moved for judgment on the pleadings. The motion of the petitioner for judgment on the pleadings was denied, and defendants' motion for summary judgment was granted. Judgment was thereupon entered and this appeal followed.

Petitioner contends that the action of the council, in awarding an owner's license for the 30 pinball machines to the Austin Sales Company rather than to petitioner, without giving any reasons there-

for, was an arbitrary and capricious exercise of the council's discretion. Since this appeal arises from the granting by the lower court of defendants' motion for summary judgment, our function in reviewing the case is well defined. We must affirm the judgment if the "pleadings, deposition, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party [defendants] is entitled to a judgment as a matter of law."[2]

■ The pertinent section of Ordinance No. 1404 of the city of Austin relating to the licensing of pinball machines reads in part as follows:

"Section 5. Granting of Licenses. The Common Council shall grant not more than two owner's licenses or 100 operator's licenses to be in effect at any one time. The Common Council may grant or deny any such application and if granted, the license may be revoked by the common council at any time without a hearing and without a notice to the licensee. * * *"

This ordinance was enacted as a valid exercise of the city's "police power." It is well established that an exercise of the "police power" will be upheld where it has for its object the public health, safety, morality, or welfare, and where it is reasonably related to the attainment of those objectives.[3] In this regard it should be noted that the unrestricted and unregulated use of amusement devices, such as pinball machines, due to their particular attributes and their appeal to the public, especially to young people, may reasonably present a situation involving the public welfare or the public morals.[4] That

---

[2]Rule 56.03 of Rules of Civil Procedure; see, Clark, *The Summary Judgment*, 36 Minn. L. Rev. 567.

[3]City of St. Paul v. Troyer, 3 Minn. 200 (291); State ex rel. Minces v. Schoenig, 72 Minn. 528, 75 N. W. 711; The Alexander Co. v. City of Owatonna, 222 Minn. 312, 24 N. W. (2d) 244; Abeln v. City of Shakopee, 224 Minn. 262, 28 N. W. (2d) 642; Columbus Legal Amusement Assn. v. City of Columbus, 50 Ohio L. A. 353, 79 N. E. (2d) 915.

[4]For a good discussion of the close relationship between an ordinance enacted to license and regulate mechanical amusement devices and a municipality's police power, see Columbus Legal Amusement Assn. v. City of Columbus, 50 Ohio L. A. 353, 359, 79 N. E. (2d) 915, 919.

518

Ordinance No. 1404 was adopted with this thought in mind is manifest from the section of the ordinance preventing the operation of such machines by any minor under the age of 18 years and also preventing the use of such machines for the purpose of gambling in any manner or form.[5] In pursuance of the foregoing power it follows that the city could also validly limit the number of licenses to be granted for the ownership as well as the operation of such "mechanical amusement devices."[6]

█ This court has repeatedly held, as have other courts, that mandamus will not lie to control the exercise of discretion of municipal and other governmental bodies or boards, having the duty of making decisions involving judgment and discretion but that such remedy will lie in those cases, among others, where such boards or bodies have acted arbitrarily, capriciously, or unreasonably.[7] In the instant case petitioner neither alleges nor shows any specific facts which would indicate that the exercise of discretion on the part of the city was arbitrary, capricious, or unreasonable. Petitioner thus, in effect, asserts that the council's action in determining who should be granted licenses for the operation of pinball machines was arbitrary, capricious, and unreasonable as a matter of law solely because of its failure to give reasons as to why it granted the license in question to another rather than to appellant.

---

[5]"Section 4. Prohibited Practices and Restrictions. No person, firm or corporation shall permit to be operated in his or her place of business any such machine or device by any minor under the age of 18 years. No person, firm, or corporation shall permit the operation of any such machine or device for making of side bets or gambling in any form. No prize, award, merchandise, gifts, money, or anything of value shall be given to any player of such mechanical machine or device."

[6]State ex rel. Howie v. Common Council, 94 Minn. 81, 101 N. W. 1063; Bjordal v. Town Board, 230 Wis. 543, 284 N. W. 534.

[7]Zion E. L. Church v. City of Detroit Lakes, 221 Minn. 55, 21 N. W. (2d) 203; Powell v. Township of Carlos, 177 Minn. 372, 225 N. W. 296; State ex rel. Lewis v. City Council, 140 Minn. 433, 168 N. W. 188; McQueen v. Williams, 173 Minn. 47, 216 N. W. 323; Mangieracina v. Haney (Mo. App.) 141 S. W. (2d) 89; Tate v. Seymour, 181 Ga. 801, 184 S. E. 598; 17 McQuillin, Municipal Corporations (3 ed.) § 51.53; 11 Dunnell, Dig. (3 ed.) § 5753.

■ In resolving this question it should be noted at the outset that the fact that petitioner had received an "owner's" license for the 19 years previous to the year in question did not entitle it to any greater consideration than should be given to an applicant applying for his first license. When petitioner's prior license expired on June 30, 1955, it resumed the status of any other citizen of the city of Austin. No person can acquire a *vested right* to continue, when once licensed, in a business, trade, or occupation which is subject to control and regulation under the proper exercise of a municipality's police power.[8] As we stated in State ex rel. Interstate etc. v. M.-St. P. M. A. Comm. 223 Minn. 175, 187, 25 N. W. (2d) 718, 726:

"* * * A license confers upon the licensee the right to engage in the licensed business only for the term specified in the license. A prior expired license is *functus officio* and confers no rights upon the licensee named therein, except in certain cases where by statute it entitles him to a renewal upon compliance with specified conditions."[9]

In the instant case there is nothing in the ordinance of the city of Austin upon which any such right to a renewal of this particular license can be premised. Therefore, since none of the three applicants for "owner's licenses" possessed any vested rights to such a license, they were all in exactly the same position prior to the actual granting of the license by the council.

■ Petitioner cites Amperse v. City of Kalamazoo, 59 Mich. 78, 26 N. W. 222, 409, as standing for the proposition that the reasons for

[8]State v. Hovorka, 100 Minn. 249, 110 N. W. 870, 8 L.R.A.(N.S.) 1272; State ex rel. Interstate etc. v. M.-St. P. M. A. Comm. 223 Minn. 175, 25 N. W. (2) 718; State ex rel. Rose Brothers L. & S. Co. Inc. v. Clousing, 198 Minn. 35, 268 N. W. 844; Abeln v. City of Shakopee, 224 Minn. 262, 28 N. W. (2d) 642; Paron v. City of Shakopee, 226 Minn. 222, 32 N. W. (2d) 603, 2 A. L. R. (2d) 1227; 13 Dunnell, Dig. (3 ed.) § 6794(3); Matter of Rudhlan Amusement Corp. v. Geraghty, 146 Misc. 308, 262 N. Y. S. 269; Matter of Tammaro v. Bruckman, 173 Misc. 958, 18 N. Y. S. (2d) 689; Zicherman v. Driscoll, 133 N. J. L. 586, 45 A. (2d) 620.

[9]See, also, Paron v. City of Shakopee, 226 Minn. 222, 32 N. W. (2d) 603, 2 A. L. R. (2d) 1227; 13 Dunnell, Dig. (3 ed.) § 6794(3).

refusing to grant an application for a license must be given by the board or body charged with the duty of making such decisions. However, that case can be readily distinguished from the instant case. In the Amperse case the Michigan court stated that the reasons for refusing to approve a liquor dealer's bond should appear of record. But there the court interpreted the city council's duties under a statute to be of a purely routine nature so that, if the bond was in proper form and the sureties were residents of the municipality and financially responsible for their undertaking, then the council had no choice but to approve the bond. Thus the council in that case was performing only a ministerial duty under a statute and did not possess the discretion vested in the city council in the instant case.

Other cases are also cited by petitioner[10] in which the courts inferred that the reasons for the refusal of a municipal board or body to grant a permit or license should be stated by the board or body. However, those cases differed from the instant case in that there was no fixed limit on the number of licenses which could be granted. In those cases it was generally held that a license is to be granted where the applicant is qualified and has complied with all conditions and prerequisites therefor and is to be denied only in those cases where proper grounds for a denial exist or where the board or body act-

[10]Zion E. L. Church v. City of Detroit Lakes, 221 Minn. 55, 21 N. W. (2d) 203 (building permit denied based on reasoning that construction of the church would increase the automobile traffic hazard); The Alexander Co. v. City of Owatonna, 222 Minn. 312, 24 N. W. (2d) 244 (building permit denied on the ground that driveway across sidewalk would be hazardous to pedestrians); Hunstiger v. Kilian, 136 Minn. 64, 161 N. W. 263 (where a rendering plant was in all respects modern, sanitary, and would not be detrimental to public health, town board's action in denying license was arbitrary, oppressive, and unreasonable); State ex rel. Minces v. Schoenig, 72 Minn. 528, 75 N. W. 711 (ordinance providing for the licensing at city council's discretion of gift, fire, and bankrupt sales construed to mean merely a reasonable discretion to refuse a license where the applicant is an unfit person to hold a license); Stewart v. Oklahoma Tax Comm. 196 Okl. 675, 168 P. (2d) 125 (the Tax Commission did not abuse its discretion in refusing to renew applicant's license to sell beer since record showed that his premises were located too close to a public dance hall).

ing within its *sound discretion* determines that proper grounds for denial exist.

In the instant case, due to the particular attributes of the business regulated, the ordinance adopted by the city of Austin provided that not more than two owner's licenses and not more than 100 operator's licenses should be granted and be in effect at any one time. Such a restriction, as previously pointed out, comes within the valid exercise of the city's police power. Moreover, all applicants were given an opportunity to appear before the council and speak in furtherance of their respective applications and, as previously shown, petitioner was heard at considerable length on two different occasions respecting his application. After an executive session lasting approximately one hour on July 1, 1955, the council, by a three to two majority, voted to grant the 30 remaining licenses to the Austin Sales Company. In considering these applications the council's basis for determining who should receive the licenses differed from that applied in the cases cited by the appellants. Here the three applicants, none of whom had any vested rights, all stood on an equal footing. The council was simply required to determine who, if any, of the applicants in its judgment were best qualified to receive the licenses, subject to the limitation that not more than two owner's licenses could be granted. Thus, even if all the applicants were fully qualified and had complied with the required conditions and prerequisites, the council could still only grant, at most, but two licenses. It is not enough for appellant to merely show that it was fully qualified to hold such a license or that it was just as capable as the applicant to whom the license was granted. It must show that the recipient of the license was incompetent, or that its qualifications were greatly superior, or some other ground must appear indicating that the grant of the license by the council was an arbitrary and unreasonable exercise of its discretion.

Here, by the very fact that all the licenses allowed under the ordinance were granted to the Austin Sales Company, it is reasonable to assume that the council, in the exercise of its discretion, evidently believed that that company was the best or the only one qualified to

have a license. In a case such as the instant one, the city is not required to show that its action was *not* arbitrary or capricious. To the contrary, the burden rests upon the petitioner to show that the council's action, in granting the license to another, was so arbitrary and capricious as to constitute a clear abuse of discretion.[11] On the record here no facts were alleged nor any shown which would indicate arbitrary or unreasonable action on the part of the council. In the absence of a showing of the unreasonable application of the ordinance in question, we cannot assume that the city council exercised its discretion in an arbitrary or capricious manner, but rather, must assume that the granting of the license in question was a sound exercise of that discretion.[12] Accordingly the judgment of the lower court must be affirmed.

It should be noted, however, that by our holding here we do not mean to imply that we favor a practice of "silence" such as was followed by the council in the instant case. Rather, while we believe the better practice is for municipal bodies to state generally the reasons for their refusal to grant a license, the failure to do so in a case such as the instant one does not, as a matter of law, constitute arbitrary or unreasonable action on the part of such a body.

Affirmed.

---

[11]Baker v. Connolly Cartage Corp. 239 Minn. 72, 57 N. W. (2d) 657; State ex rel. Ratner v. City of Minneapolis, 164 Minn. 49, 204 N. W. 632.

[12]State ex rel. Rose Brothers L. & S. Co. Inc. v. Clousing, 198 Minn. 35, 268 N. W. 844; Skrove v. Towns of Belmont and Christiania, 154 Minn. 118, 191 N. W. 584.