Janet VOETTINER, et al., Relators,

v.

COMMISSIONER OF
EDUCATION, Respondent.

No. C9–85–1151.

Court of Appeals of Minnesota.

Nov. 5, 1985.

Daniel J. Boivin, Minneapolis, for relators.

Hubert H. Humphrey, III, Atty. Gen., Cindy L. Lavorato, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Considered and decided by POPOVICH, C.J., and WOZNIAK, and HUSPENI, J., with oral argument waived.

## OPINION

WOZNIAK, Judge.

Janet Voettiner and the Stratford School seek review of the Commissioner of Education's denial of Voettiner's application for approval to teach two courses in medical office procedures. They contend Voettiner is entitled to a contested case hearing, the decision is not supported by substantial evidence, it is arbitrary and capricious, and the Department of Education revised its approval requirements without adopting rules as required by the Minnesota Administrative Procedures Act. Minn.Stat. §§ 14.01–69 (1984). We affirm.

## FACTS

Stratford School is a private vocational trade school which is licensed by the State pursuant to Minn.Stat. § 141.25 (1984). Voettiner is a teacher at Stratford and is approved to teach all but three courses listed in the school's catalog.

In October 1984, Voettiner and two other Stratford teachers applied for approval to teach Medical Office Procedures I and II because Stratford's instructor of Medical

Office Procedures was planning to leave the school. Voettiner also applied for approval to teach Medical Bookkeeping and Medical Law and Ethics. The applications were reviewed by an assistant state supervisor of the private vocational school unit and denied because the applicants did not meet the minimum requirements of Minn.R. 3530.6900, subp. 3.

Stratford and the other instructors requested reconsideration of the denials. An appeal committee was convened. It was composed of one representative selected by Stratford, one selected by the Department, and a third selected by the first two committee members.

Voettiner was given an opportunity to provide the Committee with written information regarding her background. The school was also given an opportunity to provide written information. Prior to the review proceeding, it submitted a packet of information including the applications, resumes, college transcripts, the project outline and course content for medical office procedures, the text book, a school catalog, and materials relating to the general office procedures courses and secretarial office procedures courses. The assistant state supervisor who denied the applications advised the Committee that Voettiner had been denied approval to teach the four courses because she did not have three years of employment experience or post-secondary education in those specialties. He further advised the Committee that its responsibility was to review the credentials and determine whether any of the applicants should be approved because one or more "by reason of unusual background, experience or talent [is] otherwise well qualified to instruct even though [s]he may not comply with the specific requirements" of the rules. *See* Minn.R. 3530.6900, subp. 4.

Voettiner and the two others appeared before the Committee and were given an opportunity to explain why they were qualified to teach the courses. The Committee members asked questions. A representative of Stratford and its counsel were allowed to participate.

Voettiner stated that she had a Bachelor of Science in Business Education, 34 graduate credit hours in the psychology of learning and mental health, and other course work. She has had seven years of teaching, including clerical skills, office procedures and accounting. In one course, she taught career exploration, which included the medical field. She is now teaching a several week course in medical transcription. She cited the time she had spent in a doctor's office with her family and her work at an insurance company as qualifications for teaching the medical office procedures courses. She said she plans to bring speakers into class if she feels she cannot, through reading, understand enough to teach some of the specifics which must be covered in the courses. She acknowledged that she knew nothing about medical law and ethics.

The Committee recommended that all three applications to teach Medical Office Procedures be denied. It stated:

The Committee feels that the applicants have not demonstrated an adequate familiarity in this area. It appears to the Committee that MOP I and MOP II include a significant portion of material which requires a medical orientation.

The Committee further recommended Voettiner be granted approval to teach Medical Bookkeeping because of her background in bookkeeping, but be denied approval to teach Medical Law and Ethics because she demonstrated no knowledge of the subject.

Stratford and Voettiner were notified of the Committee's recommendation. Stratford requested a contested case hearing, alleging in part that the agency's long-standing procedure was to approve teachers for all office courses. The Department responded that, with the exception of two applications made in 1978, the first year Stratford offered the Medical Office Procedures courses, the Department has consistently denied approval to applicants who have not acquired experience in medical

offices and that the same requirement has been imposed on other vocational schools offering similar courses.

The Department offered to approve Voettiner's application if she would attend an AVTI course suggested by the Department. Stratford refused.

The Commissioner issued findings of fact, conclusions of law and an order denying all three applications to teach Medical Office Procedures I and II.

Voettiner obtained a writ of certiorari.

## ISSUES

1. Are relators entitled to a contested case hearing?

2. Is the Commissioner's decision supported by substantial evidence?

3. Is the decision arbitrary and capricious?

4. Did the Department improperly adopt rules?

## ANALYSIS

### I.

Stratford and Voettiner contend they are entitled to a contested case hearing under both statute and the constitution and they are thereby entitled to judicial review.

 It is unnecessary for relators to establish that they are entitled to a contested case hearing in order for this court to have jurisdiction to review the findings of fact, conclusions of law, and order of the Commissioner of Education. Relators timely applied for and were granted a writ of certiorari. This court has jurisdiction to issue writs of certiorari to all agencies. 1985 Minn. Laws, ch. 165, § 1. Quasi-judicial proceedings may be reviewed by certiorari when there is no appeal and no other adequate remedy. *Plunkett v. First National Bank of Austin*, 262 Minn. 231, 233, 115 N.W.2d 235, 237 n. 2 (1962). There is no statutory provision for review, and thus certiorari is appropriate.

[P]reclusion of judicial review of administrative action adjudicating private rights is not lightly to be inferred. * * * Indeed, judicial review of such administrative action is the rule, and non-reviewability an exception which must be demonstrated.

*Minnesota Public Interest Research Group v. Minnesota Environmental Quality Council*, 306 Minn. 370, 376, 237 N.W.2d 375, 379 n. 7 (1975), quoting *Barlow v. Collins*, 397 U.S. 159, 166, 90 S.Ct. 832, 837–38, 25 L.Ed.2d 192 (1970). Since no statute precludes judicial review, we follow the general rule.

Voettiner contends she has a statutory right to a contested case hearing based on Minn.Stat. § 14.02 (1984).

 "An agency shall initiate a contested case proceeding when one is required by law." Minn.Stat. § 14.57 (1984). A contested case is:

[A] proceeding before an agency in which the legal rights, duties or privileges of specific parties are required by law or constitutional right to be determined after an agency hearing.

Minn.Stat. § 14.02, subd. 3. These sections do not provide a right to a contested case hearing. Rather, they provide a procedure to be followed when another statute grants such a right. *Cable Communications Board v. Nor-West Cable Communications Partnership*, 356 N.W.2d 658, 665 (Minn.1984).

 Relators cite Minn.Stat. §§ 141.25 and 141.29 as statutory authority requiring a contested case hearing. Minn.Stat. § 141.25 provides in part:

No school shall maintain, advertise, solicit for, or conduct any course of instruction in Minnesota without first obtaining a license from the commissioner.

Minn.Stat. § 141.25, subd. 1 (1984). Minn. Stat. § 141.29 provides in part:

The commissioner may, after notice and upon providing an opportunity for a hearing, pursuant to chapter 15, if requested by the parties adversely affected, refuse to issue, refuse to renew, revoke, or suspend any license or solicitor's

permit for any one or any combination of the following grounds * * *.

Minn.Stat. § 141.29, subd. 1 (1984). These sections authorize a contested case hearing if a school's license or a solicitor's permit is at issue. Stratford's license is not at issue in this case. At issue is the approval of Voettiner's application to teach Medical Office Procedures. Had the legislature also intended to require a hearing before the Commissioner approved or denied an application to teach, it would have said so. *See Cable Communications Bd.*, 356 N.W.2d at 664. Minn.R. 3530.6900 provides both for instructor approval and for "special review of the credentials of such an instructor applicant by a committee of appeal." No more is required by the applicable statutes or the rules promulgated thereunder.

▮ Voettiner also contends she had a constitutional right to a contested case hearing. She argues three theories: (1) she has been deprived of a property right because she is entitled to approval since others without medical office experience have been approved; (2) she has been denied equal protection because the law as administered unjustly discriminates between persons in similar circumstances; and (3) she is entitled to a contested case hearing because the standards in the rule are vague.

The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property. When protected interests are implicated, the right to some kind of prior hearing is paramount. But the range of interests protected by procedural due process is not infinite.

*Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 569–70, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (footnote omitted) (1972). Voettiner argues she has been deprived of a property right because she is entitled to approval.

To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. * * * Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

*Roth*, 408 U.S. at 577, 92 S.Ct. at 2709. Relying on Minnesota law, the court in *Minneapolis Auto Parts Co. v. City of Minneapolis*, 572 F.Supp. 389, 395 (D.Minn.1983), held that, prior to being issued, an applicant has no legitimate expectation of entitlement to a license or permit. Similarly, Voettiner has no claim of entitlement to an approval to teach Medical Office Procedures. *See also State ex rel. Gopher Sales v. City of Austin*, 246 Minn. 514, 75 N.W.2d 780 (1956) (no person can acquire a vested right to continue, when once licensed, in a business, trade or occupation which is subject to control and regulation under the proper exercise of a police power); *State ex rel. Interstate Air-parts, Inc. v. Minneapolis-St. Paul Metropolitan Airports Commission*, 223 Minn. 175, 187, 25 N.W.2d 718, 726 (1947) ("A license confers upon the licensee the right to engage in the licensed business only for the term specified in the license. A prior expired license * * * confers no rights upon the licensee * * * except in certain cases where by statute it entitles him to a renewal upon compliance with specified conditions."). *Compare Bird v. State, Department of Public Safety*, 375 N.W.2d 36 (Minn.Ct.App.1985) (under Minn.Stat. § 168.27, subd. 13 (1984), a notice and hearing are required before a used motor vehicle license can be revoked and thus, for due process purposes, a used motor vehicle licensee has a claim of entitlement to an existing license for the period of its duration).

▮ Relators claim Voettiner has been denied equal protection because the law as administered unjustly discriminated be-

tween persons in similar circumstances. This claim does not support a constitutional entitlement to a hearing. Rather it is a substantive claim that the commission acted arbitrarily and capriciously and is considered below.

Finally, relators argue that they are constitutionally entitled to a contested case hearing because the requirements for approval are vague. Minn.R. 3530.6900 provides:

Subp. 3. All instructors shall meet the following four requirements:

A. recognized standing as a tradesman or specialist supported by evidence from previous employers, or possession of a baccalaureate degree, or as otherwise approved by the commissioner of education;

B. acceptable general formal education as evidenced by a high school diploma;

C. written confirmation by the commissioner of education that the instructor has complied with items A, B, and C before assuming teaching duties; and

D. three years of trade or professional experience beyond the learner level in the trade or specialty to be taught, or successful completion of a college curriculum leading to a baccalaureate degree in that trade or specialty, or as otherwise approved by the commissioner of education, * * *.

Subp. 4. It is the intent of the standards of instructor qualifications to establish an effective level of teaching capability. However it is not the intent to prohibit the employment of any person who by reason of unusual background, experience, or talents is otherwise well qualified to instruct even though he may not comply with the specific requirements of these standards.

Minn.R. 3530.6900, subpts. 3 and 4. We need not decide whether vague requirements would entitle one to a contested case hearing for we do not find that the requirements of subparts 3 and 4 are vague. "Due process * * * does not require that a rule contain an explicit definition of every

term." *In re Charges of Unprofessional Conduct Against N.P.*, 361 N.W.2d 386, 394 (Minn.1985). In this case, the four requirements set forth in subpart 3 are explicit and clear. While the "unusual background, experience, or talents" of subpart 4 are not specifically defined, when read together with the requirements of subpart 3 and the stated intent to establish an effective level of teaching capability, the rule prescribes a level of expertise which is reasonably able to be determined. *See id.*

## II.

Voettiner contends the Commissioner's decision is not supported by substantial evidence. Substantial evidence is:

1. Such relevant evidence as a reasonable mind might accept as adequate to support a conclusion;

2. More than the scintilla of evidence;

3. More than some evidence;

4. More than any evidence; and

5. Evidence considered in its entirety.

*Cable Communications Bd.*, 356 N.W.2d at 668, citing *Reserve Mining Company v. Herbst*, 256 N.W.2d 808, 825 (Minn.1977). Under this test, the reviewing court evaluates the evidence relied upon by the agency in view of the entire record as submitted. If the administrative agency has engaged in reasoned decisionmaking, the court will affirm, even though it may have reached a different conclusion had it been the factfinder. *Id.*

Relators argue that the Appeal Committee and the Commissioner improperly analyzed the Medical Office Procedures courses because they do not require "extensive medical knowledge" and are basically the same as General Office Procedures and Secretarial Office Procedures courses.

Initially we note that neither the Committee nor the Commissioner requires "extensive medical knowledge." Rather, the Committee found, and the Commissioner affirmed, that Medical Office Procedures I and II include a "significant proportion of

material which require a medical orientation."

The Commissioner further found that Medical Offices Procedures is offered separately from regular office procedures courses, it is a specialty, and it requires experience and skills distinct from, and in addition to, those required to teach general office procedures courses.

According to the Stratford catalog, the objective of the medical assistant program is to equip the graduate with the skills and knowledge necessary to be a medical secretary. The catalog states Medical Offices Procedures I prepares the student to deal with patients and includes making appointments, preparing medical records and written communications, and office management. Medical Office Procedures II is the study of financial and legal responsibilities and related professional activities such as medical meetings and assisting with professional reports. In the materials sent to the panel members, the Stratford director specifically stated that Medical Law and Ethics is taught as part of Medical Office Procedures II.

The catalog and other information provided by Stratford School provide substantial evidence to support the Commissioner's conclusions. Substantial evidence also supports the conclusion that Voettiner had no training or education in medical office procedures and had no experience in a medical office.

### III.

Voettiner and Stratford claim the Commissioner acted arbitrarily and capriciously when denying Voettiner's application. Specifically, relators state that the record shows that the Commissioner approved nine similar applications in the past.

Relators direct our attention to a letter sent on behalf of Stratford School in which the Department is requested to review the files of nine individuals because the School believed they had been approved with credentials similar to Voettiner's. The Department responded,

> With the exception of the two applications in 1978, which was the first year Stratford offered the Medical Office Procedures course, the Department has consistently denied licenses to applicants who have not acquired experience in medical offices * * *. Indeed, the Department imposes the same requirements on all other vocation schools offering similar courses.

This record does not support a conclusion that the Department has been arbitrary.

The remainder of the record relating to past practices of the Department is too sparse to support a conclusion that the Commissioner's decision was arbitrary and capricious. At the appeal committee hearing, the assistant state supervisor admitted he erred in granting approval to one of the applicants for teaching Medical Bookkeeping and Medical Law and Ethics because his review of the course description was inadequate. He further said he had reassessed the description of Medical Office Procedures as well as Medical Law and Ethics "and realized the error of my ways in approving business experienced people for these subjects or units, rather than persons who have clear experience of medical related area." With the exception of the one applicant for Medical Bookkeeping and Medical Law and Ethics, it was not established how many or when he approved business experienced people for teaching medical related courses. In any event, even though he erred in enforcing the rule, the assistant state supervisor cannot be estopped from correctly enforcing it. *See Frank's Nursery Sales, Inc. v. City of Roseville*, 295 N.W.2d 604, 607 (Minn.1980). In addition, at the same time he denied Voettiner's application for Medical Office Procedures, he denied two others for the same reason that he denied Voettiner's. This consistent treatment of applicants does not support a determination that the rule has been arbitrarily applied.

## IV.

Relators contend that the Department improperly revised the requirements for approval to instruct medical office procedures when it enforced Minn.R. 3530.6900. Specifically, they characterize the decision that an instructor of medical office procedures must have "extensive medical experience" as a rule as defined by the Minnesota Administrative Procedures Act and, as such, it must be properly promulgated before it has the force and effect of law.

Minn.R. 3530.6900 requires an applicant to have "three years of trade or professional experience beyond the learner level in the trade or specialty to be taught, or successful completion of a college curriculum leading to a baccalaureate degree in that trade or specialty * * *." The Board found that Medical Office Procedures is a specialty and requires experience and skills distinct from, and in addition to, those required to teach general office procedures courses. Its determination that Voettiner must have experience or education in the medical office procedures specialty is consistent with the plain meaning of the rule. We have already determined that substantial evidence supports the decision that medical office procedures is a separate specialty.

Generally, if an agency's interpretation of a rule corresponds with its plain meaning, the agency is not deemed to have promulgated a new rule. *Cable Communications Bd.*, 356 N.W.2d at 667. The Department has straightforwardly applied Minn.R. 3530.6900 and has not promulgated a new rule.

## DECISION

The relators have neither a statutory nor a constitutional right to a contested case hearing. The Commissioner's decision is supported by substantial evidence and is not arbitrary and capricious. The Department of Education did not improperly adopt rules.

Affirmed.