**In the Matter of Carl A. MOSTROM, RN, License No. 70999.**

**No. C7–86–266.**

Court of Appeals of Minnesota.

July 29, 1986.

---

Keith M. Brownell, Duluth, for relator.

Hubert H. Humphrey, III, Atty. Gen., Audrey Kaiser Manka, Sp. Asst. Atty. Gen., Minneapolis, for respondent.

Considered and decided by RANDALL, P.J., and LANSING and HUSPENI, JJ., with oral argument waived.

## OPINION

HUSPENI, Judge.

Relator Carl Mostrom appeals by writ of certiorari from an order of the Minnesota Board of Nursing indefinitely suspending his license. We affirm.

## FACTS

Carl Mostrom is a registered nurse with a nursing license from St. Luke's School of Nursing in Duluth and a four year degree in nursing from St. Scholastica. On July 10, 1985, Mostrom admitted to his supervisor that during the two previous weeks, while working as a registered nurse for St. Luke's Hospital, he had misappropriated Demerol and Morphine Sulphate for his own use and had replaced them with water and/or saline. He also admitted to "sloppy" documentation of narcotic administration, and acknowledged that he had a major problem with alcohol use. Mostrom thereafter went through an outpatient chemical dependency treatment program and began attending Alcoholics Anonymous.

In September 1985, the respondent Board of Nursing served Mostrom with a Notice of Conference, which included a list of allegations against him and requested that he appear before a review panel of the board to discuss the allegations. Mostrom subsequently obtained counsel and signed a stipulation expressly admitting the board's allegations and waiving any formal hearing procedures to which he was entitled. In that stipulation, Mostrom also acknowledged: (1) that the acts with which he was charged constituted a violation of Minn. Stat. § 148.261 (1984), and justified the revocation of his license; (2) that proof of any one or more of the allegations would empower the board to revoke his license or take other disciplinary action authorized by Minn. Stat. § 148.261; and (3) that based upon the stipulation, and without any further notice, the board could issue a discipli-

nary order regarding his license, the nature of which was totally within the discretion of the board.

Pursuant to this stipulation, and following an oral presentation by Mostrom's attorney concerning potential sanctions to be imposed, on December 11, 1985, the board issued its order, suspending Mostrom's nursing license indefinitely but at least until July 1, 1986, and authorizing reissuance only upon certain conditions. When Mostrom learned of the board's order, he submitted a petition for rehearing. The board denied Mostrom's petition, and he appealed to this court by writ of certiorari.

## ISSUES

1. Does this court have jurisdiction to consider Mostrom's appeal?

2. Does the evidence in the record support the board's decision to indefinitely suspend Mostrom's license?

3. Was the board's action arbitrary and capricious?

4. Is this case moot?

## ANALYSIS

### I.

■ Mostrom bases his appeal upon Minn. Stat. § 14.69(e) and (f) (1984), which states:

In a judicial review under sections 14.63 and 14.68, the court may affirm the decision of the agency or remand the case for further proceedings; or it may reverse or modify the decision if the substantial rights of the petitioners may have been prejudiced because the administrative finding, inferences, conclusion, or decisions are:

&ast; &ast; &ast; &ast; &ast; &ast;

(e) Unsupported by substantial evidence in view of the entire record as submitted; or

(f) Arbitrary or capricious.

The above provision governs this court's review of contested cases under the Administrative Procedure Act. In the present situation, Mostrom waived any right to a contested case hearing and, instead, admit-

ted the truth of the board's allegations by means of a stipulation.

Recently, in *Voettiner v. Commissioner of Education*, 376 N.W.2d 444 (Minn.Ct. App.1985), we addressed the question whether this court's review of an agency decision is contingent upon a party's entitlement to a contested case hearing. The court cited Minn. Laws 1985, ch. 165, § 1, which added the following provision to Minn. Stat. § 480A.06 (Supp.1985):

The court of appeals shall have jurisdiction to issue writs of certiorari to all agencies &ast; &ast; &ast;.

In *Voettiner*, we noted that "[q]uasi-judicial proceedings may be reviewed by certiorari when there is no appeal and no other adequate remedy." *Id.* at 447. Further, we found support in *Minnesota Public Interest Research Group v. Minnesota Environmental Quality Council*, 306 Minn. 370, 237 N.W.2d 375 (1975), which states:

"[P]reclusion of judicial review of administrative action adjudicating private rights is not lightly to be inferred. &ast; &ast; &ast; Indeed, judicial review of such administrative action is the rule, and non-reviewability an exception which must be demonstrated."

*Id.* at 376 n. 7, 237 N.W.2d 379 n. 7 (quoting *Barlow v. Collins*, 397 U.S. 159, 166, 90 S.Ct. 832, 837, 25 L.Ed.2d 192 (1970)) (quoted in *Voettiner*, 376 N.W.2d at 447).

According to the above authorities, this court has jurisdiction to review Mostrom's appeal, even though the board's decision was rendered in the absence of a contested case hearing. In such a situation, the scope of review is defined as follows:

Agency decisions are reversed only when they reflect an error of law, the findings are arbitrary and capricious, or the findings are unsupported by substantial evidence.

*Cable Communications Board v. NorWest Cable Communications Partnership*, 356 N.W.2d 658, 668 (Minn.1984).

### II.

■ Mostrom argues that the evidence in the record does not support the board's

decision to suspend his license because that evidence does not demonstrate that he was either "habitually intemperate" or "addicted to" habit-forming drugs. Minn. Stat. § 148.261 (1984) states:

> The board [of nursing] shall have power to deny, suspend, revoke or restrict the license and registration of any person to practice professional nursing * * * or to otherwise discipline a licensee * * * upon proof that the person:
>
>    *     *     *     *     *     *
>
> (3) Is unfit or incompetent by reason of negligence, habits or other causes;
> (4) Is habitually intemperate or is addicted to the use of habit-forming drugs;
> (5) Has, in his or her professional capacity, exhibited behavior which creates an undue risk of harm to others;
> (6) Is guilty of unethical practice of nursing * * *.

The record consists entirely of Mostrom's stipulation,[1] and the facts therein clearly support the board's action. Although the misappropriation of patients' drugs and the substitution of saline and/or water may not evidence habitual intemperence or addiction to drugs, these actions do demonstrate that Mostrom was unfit or incompetent and that he exhibited behavior creating an undue risk of harm to others.

██ When a party stipulates to certain damages upon a finding of liability, he cannot thereafter contest those damages. *See Collins v. Marquette Trust Co.*, 187 Minn. 514, 516, 246 N.W. 5, 6 (1932); *Warren v. Great Northern Railway Co.*, 64 Minn. 239, 241, 66 N.W. 984, 985 (1896). Settlement of disputes without litigation is "highly favored", *Gould v. Johnson*, 379 N.W.2d 643, 646 (Minn.Ct.App.1986), and except under certain limited circumstances, not alleged here, parties should not be allowed to assail their own stipulation. *See Warren*, 64 Minn. at 241, 66 N.W. at 985; *Abendroth v. National Farmers Union Proper-*

*ty & Casualty Co.*, 363 N.W.2d 785, 787–88 (Minn.Ct.App.1985).

The stipulation indicates that Mostrom knew the board's action was warranted. In addition, there is other evidence in the record that demonstrates that Mostrom knew of the potential for suspension. A letter from the attorney general to Mostrom's counsel dated January 15, 1986, indicates that Mostrom's counsel was advised that suspension would probably result from Mostrom's stipulation. Thus, Mostrom was fully aware when he signed the stipulation that the board could suspend his license.

## III.

██ Mostrom claims that the board's order was arbitrary and capricious because other state agencies do not impose the same sanctions upon licensees who have drug problems. He cites Minn. Stat. § 214.10, subd. 8(d) (Supp.1985), which requires that all health-related licensing boards establish procedures for exchanging information. Mostrom concludes that this statute also requires all health-related licensing boards to impose similar sanctions. We disagree. The exact language of the statute is as follows:

> (d) Each health-related licensing board shall establish procedures for exchanging information with other Minnesota state boards, agencies, and departments responsible for licensing health-related occupations, facilities, and programs, and for coordinating investigations involving matters within the jurisdiction of more than one licensing body. The procedures must provide for the forwarding to other licensing bodies of all information and evidence, including the results of investigations, that are relevant to matters with that licensing body's regulatory jurisdiction. * * *

Minn.Stat. § 214.10, subd. 8(d) (Supp.1985).

Even if Mostrom's interpretation of this subdivision were correct, a review of disci-

---

1. We do not consider the "transcript" attached to relator's brief, which is a purported record of relator's counsel's oral argument to the review panel on the subject of Mostrom's potential dis-

cipline. These typewritten pages do not conform to Minn. R. Civ. App. P. 110.02, subd. 4, since a reporter has not certified the correctness of the document.

plinary statutes for similar professions reveals that other licensees who abuse drugs and/or alcohol are subject to similar sanctions. Other health-related licensing boards include the board of medical examiners, the board of chiropractic examiners, the board of pharmacy, the board of podiatry, the board of veterinary medicine, and the board of dentistry. Minn. Stat. § 214.-01 (1984). Each of these boards has provisions for suspending a licensee who abuses drugs or alcohol. *See* Minn. Stat. § 147.-021, subd. 1(*l*) (Supp.1985); § 148.10, subd. 1(5) (1984); § 151.06, subd. 1(6)(d) (1984); § 153.08(3) (1984); § 156.081, subd. 2(3) (Supp.1985); § 150A.08, subd. 1(4) and (5) (1984). Mostrom's equal protection argument is therefore without merit.

## IV.

 According to the order of indefinite suspension, Mostrom may petition at any regularly-scheduled board meeting after July 1, 1986, to have his license reinstated. The board has indicated that the first regularly-scheduled meeting will be held on July 31, 1986. Thus, the board argues that by the time this court renders a decision, Mostrom might have already received a reissued license, rendering his appeal moot. We will not dismiss an appeal based upon such speculation. Only if it is called to our attention that an event has actually occurred will an appeal be dismissed for mootness.

## DECISION

The indefinite suspension of relator's license was proper.

Affirmed.