F. L. REES, Respondent, v. CHICAGO, BURLINGTON & QUINCY RAILROAD CO. et al., Appellants.

St. Louis Court of Appeals, March 21, 1911.

1. **JURY: No Vested Right in Juror: Function of Challenge.** No party has a vested right in a particular juror, until such juror is accepted and sworn, and the same is true of an entire panel, the privilege of challenge being the right to reject and not to select.

2. ————: **Irregularity in Peremptory Challenges: Waiver by Failure to Object Before Verdict: Facts Stated.** After plaintiff had waived his right to peremptorily reject any three of the eighteen jurors on the list as originally furnished, defendants struck off the names of three jurors from among the first twelve and then rewrote them at the bottom of the list, and afterwards struck off three names from among the first fifteen on the revised list, and thus, in effect, (inasmuch as the first twelve

Rees v. Railroad.

jurors on the list compose the jury, when all peremptory challenges are not made) appropriated six challenges, when under the statute they were entitled to three challenges only. *Held*, that although plaintiff was ignorant of the change, he was chargeable with knowledge thereof, as he had examined the list a few minutes before; and that his failure to object until after verdict operated as a waiver of the objection, especially as it did not appear that any of the jurors was biased or prejudiced against him, nor that the verdict was unfair.

3. ————: **Irregularities: Harmless Result.** The law looks with disfavor upon the practice of setting aside a verdict for an irregularity touching the jury, where there is no complaint that it contributed to an unjust result.

4. ————: ————: **Waiver:** Timely Objection. Irregularities in the selection of a jury, resulting from a re-arrangement of names on the list by counsel in making peremptory challenges, are waived, unless attention is called to them in due time by a proper objection; and, as a general rule, such an objection, if made after verdict for the first time, will be unavailing.

5. ————: ————: ————: ————: **Excuse: Lack of Diligence.** Where it appears that a party complaining of irregularities in the selection of a jury has not exercised reasonable diligence toward ascertaining the fact of the irregularities, when it was open, and interposed no objection to such jury until after the trial was completed and an unsatisfactory verdict returned, the law will reject the excuse that he was without knowledge on the subject, the lack of diligence alone being regarded as a waiver of his right to complain, after verdict.

Appeal from Montgomery Circuit Court.—*Hon. James D. Barnett,* Judge.

REVERSED AND REMANDED (*with directions*).

*Palmer Trimble* and *Claude R. Ball,* for appellant, Chicago, Burlington & Quincy Railroad Company.

*W. F. Evans, E. T. Miller* and *Rosenberger & Son,* for appellant, St. Louis & San Francisco Railroad Company.

The court erred in sustaining plaintiff's motion for a new trial. (a) But one ground was assigned by the trial court for sustaining plaintiff's motion for new

trial. The grounds not mentioned are deemed to have been overruled. Connally v. Pehle, 105 Mo. App. 407; Dale & Bennett v. Mining Co., 110 Mo. App. 317; Crawford v. Stock Yards Co., 215 Mo. 402. (b) The motion for new trial should have been supported by the affidavit of plaintiff himself and by Mr. Barker, one of his counsel, instead of being supported only by the affidavit of Mr. Babry, another of plaintiff's counsel. Roofing Co. v. Church, 137 Mo. App. 104; State v. Howard, 118 Mo. 136; State v. Hunt, 141 Mo. 637; State v. Barrington, 198 Mo. 93; 1 Thomp. on Trials, sec. 116; Thomp. and Mer. on Juries, secs. 275 and 302. (c) No exception was taken or saved to the alleged misconduct of defendants' attorneys, nor to any jurors, nor to the panel before the jury was sworn. Sec. 3763, R. S. 1899; State v. Brewer, 109 Mo. 652; Easley v. Railroad, 113 Mo. 246; Tarkio v. Cook, 120 Mo. 11; State v. Foley, 220 Mo. 86; Am. and Eng. Ency. Law (2 Ed.), 1161, 1169. (d) The entire record shows that in no event was plaintiff entitled to recover a larger sum than that represented by the verdict returned. Crutcher v. Railroad, 132 Mo. App. 311; Boling v. Railroad, 189 Mo. 219; Railway v. McCullough, 45 S. W. 324; Dangerfield v. Railroad, 61 Pac. 405. (e) As plaintiff could not have been prejudiced by the action complained of, the verdict should not have been set aside. Am. Guar. Co. v. Mattson, 100 Mo. App. 316; Woody v. Railroad, 104 Mo. App. 678; State v. Taylor, 171 Mo. 475; Markowitz v. Railroad, 186 Mo. 350; Levels v. Railroad, 196 Mo. 106; Railroad v. Sloop, 200 Mo. 198.

*W. L. Mabry* and *John M. Barker* for respondent.

The claim that plaintiff's motion for a new trial was defective as not having been properly sworn to, is not well taken, because the law does not require such motions to be sworn to. As a matter of practice they are oftentimes sworn to, but it is not required by law.

Appellant relies on section 3763, Revised Statutes of 1899, but that statute does not cover at all the plaintiff's complaint, only referring to specific legal disabilities, not alluding to improper conduct of counsel. The court is not confined to the statutory grounds. Leahey v. Dugdale, 41 Mo. 517. But section 800 allows a trial court to allow a new trial for any deceit practiced. The cases referred to by appellant in this connection are totally unlike this case. Sec. 3783, Rev. Stat. 1899, shows the number of peremptory challenges each party is entitled to.

NORTONI, J.—This is a suit for damages accrued to plaintiff on account of an alleged wrongful ejection from a passenger train. Plaintiff recovered a verdict of $5.71 but the court subsequently set it aside on his motion and defendants prosecute the appeal from that order. The case proceeds against defendants St. Louis & San Francisco Railroad Company and the Chicago, Burlington & Quincy Railroad Company jointly on the theory that the obligation of each was breached by the ejection of plaintiff, who, at the time, was a passenger on the St. Louis & San Francisco Railroad in Kansas.

It appears plaintiff purchased a ticket at Wellsville, in Montgomery county, Missouri, from the Chicago, Burlington & Quincy Railroad Company for transportation over the two roads to Brownsville, Texas, and return. The Chicago, Burlington & Quincy agent at Wellsville issued to plaintiff transportation over its road to Kansas City and an exchange slip entitling him to a ticket over the St. Louis & San Francisco Railroad from Kansas City to Brownsville, Texas, and return. Plaintiff paid the price of the through transportation to the Burlington agent at Wellsville and upon arriving at Kansas City presented the exchange slip to the agent of the St. Louis & San Francisco Railroad Company, who, in return, gave him therefor a round trip excursion ticket at reduced rates, good on the short line

between Kansas city and Brownsville, Texas. The ticket involved and that which plaintiff purchased is one known as a homeseekers' excursion ticket which the railroad companies issued at a reduced rate, and was good only by provision on its face over the short line, but it provided, too, that plaintiff might have his choice of five optional routes for a portion of the distance. Blackwell, Oklahoma, is not on any of the routes mentioned in the ticket, but is situate on another line of railroad owned by defendant, St. Louis & San Francisco Railroad Company. Stopover privileges were allowed by the ticket at any place on the roads designated therein and plaintiff desired to go to Blackwell, Oklahoma, and stop there a day or two in order to look at some lots he owned at that place. It is in evidence for plaintiff that he was not familiar with the country and did not know on what particular line of the St. Louis & San Francisco Railroad Company Blackwell was located, but was assured by both the Chicago, Burlington & Quincy Railroad Company's agent at Wellsville, Missouri, and the St. Louis & San Francisco Railroad Company's agent at Kansas City that the ticket was good to that place. Plaintiff further testified that the St. Louis & San Francisco ticket agent at Kansas City accompanied him to the train and instructed that he should change cars at Columbus, Kansas, and again at Beaumont for Blackwell. Plaintiff complied with these instructions and changed cars at both places in accordance with the directions given him by the agent from whom he procured the ticket in Kansas City, but the conductor on the branch road from Beaumont to Blackwell refused to honor the ticket for the reason it was not good on that line, and ejected him from the train. It is conceded that by its provisions the ticket did not entitle plaintiff to transportation from Beaumont to Blackwell, though such is not expressed on the face of the ticket. But plaintiff relies for a recovery upon

either the willful or negligent misdirection given by the agent at Kansas City.

It appears from both the testimony of plaintiff and the conductor that the ejection from the train was conducted with propriety. While plaintiff declined to accede to the mere request of the conductor and insisted upon being ejected, he says the conductor was polite and courteous and neither insulted nor abused him when enforcing his command. Furthermore, it appears no force was employed and withal the conductor performed the task in a quiet and gentlemanly manner. Plaintiff took the next train for Blackwell and was required to pay out $5.71 railroad fare in order to finally reach Blackwell and return to a point on defendants' lines where his ticket was good.

A verdict for plaintiff was returned to the amount of $5.71 only and this verdict the court subsequently set aside on his motion for irregularities pertaining to challenging and impaneling the jury. The facts pertaining to this matter are as follows: Eighteen jurors were assembled by the court, as is usual in such cases, and qualified on their voir dire as competent for the purposes of the case. A list containing the names of the eighteen jurors was furnished to plaintiff's counsel for the purpose of peremptory challenge. He retired and examined the same but declined to make any challenges therefrom whatever. Plaintiff's counsel returned the list and in open court announced that he was satisfied with it as it stood; that all of the first fifteen names on the list were satisfactory and that no challenge would be made by him. The jury list was thereupon given into the possession of defendants' counsel who retired to consider of their challenges. It may be said here that the statute, section 7281, Revised Statutes 1909, entitles either party in cases such as this one to three peremptory challenges but several plaintiffs or defendants are required to join in such challenges. While defendants' counsel were engaged in exercising their right

of challenge, they struck off the names of three jurors from the first twelve and re-wrote them at the bottom of the list and then exercised their right by striking off three names from among the first fifteen as they appeared on the revised list. This matter is explained in the evidence taken on the motion for a new trial as follows: It is said counsel first determined to exercise their right of challenge with respect to three jurors on the list among the first twelve and did so by passing a pencil through the name of each one of the three so determined upon to be peremptorily challenged. After further consideration, counsel determined to exercise their right of challenge as to three different jurors from those first stricken from the list and did so by striking therefrom three other and distinct names and rewriting at the foot of the list the names of those first stricken therefrom. This procedure of course operated to change the list from that originally made out, in that it removes three jurors who would otherwise have been called among the first twelve to the bottom of the list, where they would not be called at all, in view of the fact that plaintiff had declined to make any challenges whatever. The list of eighteen jurors, as originally made up, contemplated that each party to the suit, that is plaintiff, and the two defendants acting together, should peremptorily challenge three jurors and thus reduce the number to twelve which would constitute the panel selected to try the issue. The pratice obtains to the effect that if either party declines or omits to exercise his right to challenge and more than twelve names are left on the list after both parties have made their challenges or waived them, the first twelve are called and sworn to try the case. In view of the fact that plaintiff waived his challenges, had defendants exercised their right to strike from the list three names only, then the jury which tried the case would necessarily have been made up from among the first fifteen names on the list, whereas it resulted from the course pursued that the jury was not

so selected. Upon defendants' counsel returning the
jury list into court, it appears the clerk called the
names of the first twelve thereon as it was rearranged,
one by one, and they responded thereto in the presence
of plaintiff and his counsel. The jurors thus called were
assembled and sworn to try the cause in the presence of
plaintiff and his counsel and took their places in the
jury box without any objection whatever being raised
by plaintiff or his counsel. The cause proceeded to
trial and resulted in a verdict as above stated for $5.71,
or the actual amount which the evidence shows was ex-
pended by plaintiff in railroad fare after being ejected
from the train. The first objection interposed to the
panel was made thereafter by plaintiff in his motion
for a new trial, wherein, by affidavit, he set forth the
facts hereinabove recited and relied upon with respect
to the conduct of defendants' counsel in re-forming the
jury list. Besides the affidavits, the court heard the
proof fully with respect to this matter and found the
facts as above stated, but further found that there was
no intentional sharp practice involved in the matter.
On the contrary, the court expressly found and recited
the fact in writing to the effect that though defendants'
counsel changed the jury list in the manner above stated,
they did so in the utmost good faith and declared it to
be a mere inadvertence. But the court nevertheless set
the verdict aside on the sole and only ground of such
change, as though plaintiff had a fixed right to have
the jury selected from the first names on the list.
Though the practice obtains to empanel and swear the
first twelve remaining on the list when one side declines
to make his challenges and the other exercises the right,
or when both waive it, it is the universal rule of decision
that no party has a vested right in a particular juror
until such juror has been accepted and sworn; and the
same is true of an entire panel. The doctrine is that
the privilege of challenge is the right to reject and not
the right to select. Therefore, if plaintiff saw fit, as

he did, to voluntarily waive his right to reject any three
of the jurors on the list as originally furnished, this
feature of the question is foreclosed thereby, for, not-
withstanding the practice above referred to, he acquired
no fixed right to the service of any particular juror
prior to the time they were sworn and impaneled to
try the case.    [O'Brien v. Iron Wks., 7 Mo. App. 257;
1 Thompson on Trials, sec. 120.]    But it is said defend-
ants actually exercised six challenges when the statute
accords them jointly but three.    The statute so provides
beyond question.    [Sec. 7281, R. S. 1909.]    The argument
is, that counsel knew under the practice the first twelve
jurors on the list, as finally submitted in court, would
be called and that by so removing the names of three
of the panel from among the first fifteen to the foot of
the whole list and erasing their names from above,
together with the three peremptory challenges exercised,
they in fact appropriated six challenges.    This may be
true; but plaintiff must be deemed to have acquiesced
therein with full knowledge of the fact, for the list as so
rearranged was thereafter called and the jury impaneled
in the presence of both him and his counsel in open
court without objection from them.    It appears that
two attorneys for plaintiff sat at the counsel table at the
time, heard the list called, saw the jury sworn and
made no objection whatever to the panel or to any
member thereof, and the case was tried throughout with-
out an objection on this score until after the verdict
was rendered and the motion for new trial filed.    There
is not a suggestion in the case that any juror was biased
or prejudiced nor that the verdict was in any manner
affected by the rearrangement of the names on the list,
and the law looks with a high degree of disfavor upon
the practice of setting aside verdicts for irregularities
touching the jury when there is no complaint that it
contributed to an unjust result.    [1 Thompson on
Trials, sec. 116.]    Judge Thompson says, "Unless there
is plain evidence of injustice done to the party com-

plaining, the verdict should be allowed to stand." [Sec. 116; see also 17 Am. and Eng. Ency. Law (2d Ed.) 1160-1169.] Furthermore, irregularities such as this which would otherwise entitle a party to a rearrangement of the list and the substitution of the prior names on the panel are deemed to be waived if there is a failure to call attention to them in due season by proper objection. As a rule, such an objection cannot be made for the first time after verdict. Judge Thompson says, "a known or *obvious* irregularity in the process of impaneling must be objected to at the time when it is committed; it will be too late to make the objection for the first time on a motion for new trial or in arrest of judgment." [1 Thompson on Trials, secs. 113, 114; 17 Am. and Eng. Ency. Law (2 Ed.), 1113, 1114; see also State v. Waters, 62 Mo. 196; Boteler v. Roy, 40 Mo. App. 234; State v. Ward, 74 Mo. 253; State v. Marshall, 36 Mo. 400; Easley v. Mo. Pac. R. Co., 113 Mo. 236, 20 S. W. 1073.]

There is evidence that though plaintiff and his counsel were present when the jury was impaneled and sworn and during the trial throughout, they were without knowledge as to the fact that defendants' counsel had rearranged the jury list so as to really exercise six challenges instead of three until after the verdict was rendered. It is said that their omission to object and call the matter to the attention of the court at the time was because of their ignorance touching the same. Conceding these facts to be true, plaintiff is nevertheless precluded as to such an open and obvious matter by his lack of diligence. It appears that, only a few moments before, he and his counsel carefully studied the jury list sufficiently to determine that any one of the first fifteen named thereon was satisfactory to them. When a jury was called therefrom shortly after, it was obvious to anyone exercising reasonable diligence in the premises that six of the names among the first fifteen were not called, not sworn and did not take their places in the

jury box. Had the matter not been noticed immediately, it appears they entered upon a trial which continued for hours before this panel and made no objection. Knowledge to either of plaintiff's two attorneys is equally imputable to him and all are required to exercise ordinary diligence with respect to the situation immediately before them. If it appears the party complaining has not exercised reasonable diligence toward ascertaining the facts when it is sufficiently open, as here, and interposes no objection until after the trial is complete and an unsatisfactory verdict returned, then in order to discourage further litigation of the same subject matter, the law will reject the excuse that he was without knowledge on the subject. 1 Thompson on Trials, sec. 116. In such circumstances, the lack of diligence alone is regarded, accepted and treated as a waiver of the right to complain after verdict. [1 Thompson on Trials, sec. 116; 17 Am. and Eng. Ency. Law (2 Ed.), 1166, 1167, 1168.] Indeed, even in a criminal case, the failure of defendant to discover that one on the panel which convicted him was a member of the grand jury which found the indictment has been held to show negligence depriving him of the right to make such objection after verdict, in numerous cases. [Jones v. State, 95 Ga. 497; Coleman v. Commonwealth, 8 Ky. L. Rep. 607; State v. Smith, 41 La. 688; see also 1 Thompson on Trials, sec. 114.]

In view of the fact there is no suggestion that any of the jurors was either biased or prejudiced against plaintiff or that the verdict was unfair, it is entirely clear that the matter of defendants' removing six names instead of three from among the first fifteen on the list should be treated as waived by plaintiff's omission to exercise diligence at the time of impaneling the jury or during the trial, for in the eye of the law he knew there was some change in the arrangement of the jurors' names as it was open and obvious to any one who had examined the list only a few months before.

The matter above discussed is the only ground on which the court sustained the motion for a new trial and we have scanned the records with care to see if it may be properly sustained on any other. Throughout, no exceptions whatever were preserved by plaintiff to any ruling of the court and, indeed, nothing to be found in the record suggests error sufficient to authorize disturbing the verdict of the jury. The jury awarded plaintiff a recovery for $5.71, which appears to be the actual amount expended by him because of being ejected from the train and while we cannot say that the evidence would not support a recovery as well for humiliation, it is entirely clear that there is naught in the case tending to show either malice, insult or inhumanity, and no claim is made for loss of time or personal injury. On the entire record, the case seems to be without much substantial merit and the verdict may not be said to be an unfair one. The order granting a new trial should be set aside and the cause remanded with directions to the trial court to reinstate the verdict and enter judgment thereon. It is so ordered. *Reynolds, P. J.,* and *Caulfield, J.,* concur.