2003 OK CIV APP 20

LeEtta OSBORNE, Plaintiff/Appellant,

v.

MOLLMAN WATER CONDITIONING, INC., an Oklahoma corporation d/b/a Culligan Water Conditioning, and Asphalt Producers, Inc., an Oklahoma corporation, Defendants/Appellees.

No. 96,526.

Court of Civil Appeals of Oklahoma, Division No. 4.

Dec. 17, 2002.

Certiorari Denied Feb. 24, 2003.

---

W. Terry Flaugher, W. Terry Flaugher, P.C. Oklahoma City, OK, for Plaintiff/Appellant.

David H. Cole, Michael Woodson, Scott R. Farris, Edmonds, Cole, Hargrave, Givens, Witzke, Ryan & Woodson, Oklahoma City, OK, for Defendant/Appellee Mollman Water Conditioning.

Peter A. Erdoes, Oklahoma City, OK, for Defendant/Appellee Asphalt Producers.

Opinion by JOE C. TAYLOR, Presiding Judge.

¶ 1 Plaintiff, LeEtta Osborne, appeals from a judgment on a jury verdict against her in an automobile accident case. The jury found Plaintiff's contributory negligence was greater than the combined negligence of all Defendants, resulting in no recovery by Plaintiff. There are two issues on appeal: (1) whether the trial court committed reversible error by allowing each Defendant to exercise three peremptory challenges when Plaintiff was limited to three such challenges; and (2) whether the trial court erred in refusing to allow Plaintiff to present as a rebuttal witness an accident reconstruction expert. Based on our review of the record, the parties' briefs, and the applicable law, we find that the trial court did not err and affirm the judgment.

*Facts*

¶ 2 This lawsuit arose from a multiple vehicle collision on Interstate 40 near downtown Oklahoma City on June 19, 1997. Plaintiff and four other vehicles were traveling east on Interstate 40, when traffic congestion triggered a chain reaction collision that spread across all three lanes of traffic. The motorists involved in the crash, in addition to Plaintiff, included employees of Defendants Mollman Water Conditioning, Inc., d/b/a Culligan Water Conditioning (Mollman), and Asphalt Producers, Inc. (Asphalt), and two nonparties, Michael Meadows and Paul Frolich.

¶ 3 Plaintiff brought this action against Mollman and Asphalt in April 1999, claiming their negligence caused the accident. Following nearly two years of discovery and case preparation, the matter was tried to a jury over a five-day period in March 2001. Prior to trial, Defendants requested and were granted three peremptory challenges each as to the proposed jury panel.[1] It is

---

1. This issue is addressed in the record by means of a narrative statement approved by the trial court after the trial was completed. According to the narrative statement, counsel appeared before the trial court prior to trial "for the purpose of discussing voir dire procedures and other matters" in the case. After the trial judge advised Plaintiff that she would be allowed three peremptory challenges, he "was advised by the attorneys for the Defendants that their defenses were antagonistic or adverse; that Defendant Asphalt Producers' driver had a pending lawsuit against Defendant Mollman arising out of the same accident ... and that they therefore requested three

undisputed that Plaintiff did not, at any time prior to this appeal, lodge an objection to the grant of supernumerary challenges to the defense. Defendants exercised all six peremptory challenges and Plaintiff exercised her three.

¶ 4 At trial, Plaintiff called 18 witnesses in her case-in-chief, none of whom were accident reconstruction experts. Testimony concerning the order and timing of events leading to the crash was conflicting. It included evidence from at least two witnesses, including Plaintiff herself, that Plaintiff accelerated when she saw the Mollman truck start to come from the far right lane of traffic toward the far left lane, where Plaintiff was driving. Plaintiff testified she "speeded up" when she saw the Mollman truck heading for her lane because she thought she could "get out of his way,"[2] and that it was only after she realized the truck was not going to miss her that she applied her brakes and tried to stop.

¶ 5 In its case-in-chief, Mollman called an accident reconstruction expert, Robert W. Painter, Jr., who gave his opinion that a "normal, prudent" driver would have reacted by braking rather than accelerating upon the sight of a truck coming into his or her lane. He also opined that had Plaintiff braked rather than accelerated there would have been no contact between Plaintiff's vehicle and the Mollman truck. Painter had been listed as a witness for Asphalt for several months, but Plaintiff had not attempted to depose him prior to trial.

¶ 6 Defendants called only two other witnesses—a physician and a psychiatrist—and rested. Plaintiff thereafter sought to call her own accident reconstruction expert as a rebuttal witness, and Defendants objected. The trial court sustained Defendants' objection, noting Plaintiff had not listed the witness, Plaintiff had never attempted to depose Painter, and Defendants had never had an opportunity to depose the proposed witness. The matter was submitted to the jury, which returned a verdict attributing 59 percent contributory negligence to Plaintiff, 38 percent negligence to Mollman, and 1 percent each to Asphalt, Meadows, and Frolich. The trial court entered judgment on the verdict.

¶ 7 Plaintiff appeals, asserting, first, that the record as a whole, including Defendants' cooperation with each other at trial, shows no serious conflict of interest between Defendants, and the trial court therefore committed fundamental, reversible error by allowing each Defendant three peremptory challenges. She also asserts it was reversible error to disallow Plaintiff's use of the previously unidentified accident reconstruction expert on rebuttal. Defendants argue that Plaintiff's failure to object to the trial court's decision allowing the additional challenges did not preserve that issue for appellate review, and that the trial court properly exercised its discretion in disallowing the rebuttal witness under the circumstances presented.

*Peremptory Challenges*

■ ¶ 8 As a general rule each side in a lawsuit—plaintiff and defense—is entitled to a total of three peremptory challenges. *See* 12 O.S.2001 §§ 573, 575.1; *M & D Motor Freight Lines v. Kelley,* 1948 OK 128, 202 P.2d 215 (three peremptory challenges to joint tortfeasor defendants). Under § 575.1, however, if a trial court determines there is a "serious conflict of interest" between one or more defendants, then the court may allow three peremptory challenges to each defendant. The same statute leaves the question of whether and when to grant supernumerary challenges to the trial court's discretion.

¶ 9 Judicial discretion in this area is not "unregulated," however, and in *Thompson v. Presbyterian Hospital, Inc.,* 1982 OK 87,

(3) peremptory challenges each," to which Plaintiff's counsel neither consented nor objected. The trial court then "acknowledged a serious conflict of interest" between Defendants, and granted the request for three peremptory challenges to each Defendant, and "[a]ll challenges were exercised by the respective parties."

**2.** Plaintiff testified on cross examination:

Q [Y]ou saw the Culligan [Mollman] truck starting to merge out of the right lane, correct?
A Yes.
Q And you thought at that point that you could outrun the truck?
A I thought maybe if I speeded up.
Q You could outrun that Culligan [Mollman] truck?
A I could get out of his way.

¶ 31, 652 P.2d 260, 268, the Supreme Court reversed a jury verdict because a trial court had abused its discretion by granting supernumerary challenges to the defense when there was no "serious dispute" among the defendants. The Court noted the defendant hospital had requested and received the additional challenges based solely on the hospital's suggestion that a conflict was likely to evolve among the defendants, but had offered no other support for the existence of conflict among those parties. *Id.* at ¶ 26, 652 P.2d at 266–67. The Court further held that the plaintiff was not required to prove actual prejudice resulting from the grant of the extra challenges, but that on appellate review, "[p]rejudice to the plaintiff will be deemed to have occurred when any additional peremptory challenge is allowed to a defendant," and the judgment in question will be reversed unless the record shows a "serious dispute" in fact exists between one or more co-defendants in the case. *Id.* at ¶ 31, 652 P.2d at 267.

¶ 10 The Court in *Thompson* did not address whether a party must timely object in the lower court to the allocation of peremptory challenges in order to preserve the error for appellate review, nor has it addressed that issue since *Thompson* was decided. Though the issue has not been widely addressed in other jurisdictions, it appears that courts that have addressed the question have either required or assumed that a timely objection in the lower court *is* needed to preserve the error for appellate review. *See, e.g., Texas Commerce Bank Reagan Through Texas Commerce Bank Nat'l Ass'n v. Lebco Constr., Inc.,* 865 S.W.2d 68, 77–78 (Tex.Ct. App.1993) *disagreed with on other grounds by Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc.,* 962 S.W.2d 507 (Tex. 1998); *Gestring v. Mary Lanning Mem. Hosp. Ass'n,* 259 Neb. 905, 613 N.W.2d 440, 447 (2000); *Rees v. Chicago, B & Q Ry. Co.,* 156 Mo.App. 52, 135 S.W. 981, 983–84 (Ct. App.1911); 50A C.J.S. *Juries* § 442 (1997).

¶ 11 This view is consistent with the one often expressed by the Oklahoma Supreme Court that a party's failure to lodge a timely objection to a trial court's action results in appellate review only for fundamental trial court error. *See e.g., Pine Island Resort, Inc., v. Resort Mgmt., Inc.,* 1996 OK 83, ¶ 15, 922 P.2d 609, 613. This is true, also, of constitutional issues, which the Supreme Court has recognized may not be raised for the first time on appeal unless the issue is jurisdictional or is one implicating the public welfare or interest. *See e.g., Johnson v. City of Woodward,* 2001 OK 85, ¶ 21, 38 P.3d 218, 226–27 (court will not consider equal protection issue raised for first time on appeal as to constitutionality of statutory presumption); *McGlumphy v. Jetero Const. Co., Inc.,* 1978 OK 154, ¶ 22, 593 P.2d 76, 83 (issue of constitutionality of lien statutes not presented to trial court nor urged in petition-in-error would not be addressed for first time on appeal). Plaintiff does not argue, and we do not recognize here, an issue implicating the court's jurisdiction or the public welfare.

¶ 12 In light of the fact that *Thompson* made clear the requirements for a grant of supernumerary challenges, it is only reasonable to require any party who feels those requirements have not been met to bring to the trial court's attention the alleged lack of a conflict of interest. Here, Plaintiff registered no objection until filing this appeal. Even though, in *Thompson,* the Court indicated that unwarranted excess peremptory challenges may implicate due process issues, we find nothing in that case suggesting that, after a trial court specifically finds a serious conflict of interest exists, a party may wait until after an adverse jury verdict has been returned before challenging the court's decision allowing supernumerary challenges. We therefore hold that a timely objection must be made to a trial court's allocation of peremptory challenges in order to preserve for appellate review any error other than fundamental error. Because Plaintiff did not lodge any objection with the lower court, we review the trial court's action here only for fundamental error.

¶ 13 Plaintiff appears to argue that, because the Oklahoma Supreme Court in *Thompson* framed the issue as one implicating a party's right to due process and an impartial jury, this means that *any* trial court error in awarding supernumerary challenges that appears at *any time* during trial

constitutes fundamental error. Plaintiff points primarily to Defendants' collaborative strategies *during trial* to support her argument that no conflict of interest existed, and, therefore, fundamental error occurred. We reject this approach.

¶ 14 *Thompson* makes clear that some showing of an actual conflict of interest between the parties in question must appear of record in order to avoid reversal of a decision to allow extra challenges. Though not specifically addressed by the Oklahoma Supreme Court, the decision implicitly suggested that the determination of whether a conflict exists should be judged as of the time the decision is made to allow the extra challenges. This approach is consistent with the reasoning of a number of other courts that have considered the issue, and is the approach we use here. In *Sand Hill Energy Inc. v. Ford Motor Co.*, 83 S.W.3d 483, 488 (Ky.2002), the Kentucky Supreme Court stated:

> While it may appear in retrospect that [the relevant parties] lacked any substantial antagonistic interest, such could not have been known by the trial court at the time the jury was selected. It has been suggested that the positions parties take at trial should determine whether they have antagonist interests, but such a rule is utterly unworkable. At the time a trial judge must make the allocation of peremptory challenges, there can be no certainty as to what the evidence will show or precisely what the claims or defenses will be.... (Footnotes omitted.)

*See also King v. Special Res. Mgmt., Inc.*, 256 Mont. 367, 846 P.2d 1038, 1041 (1993) ("This procedure eliminates the need for us to review the entire record using a hindsight approach to determine whether the parties were in fact 'hostile' during the course of the trial.").

¶ 15 The record in the case at bar supports the trial court's determination that such a conflict existed between Defendants. At the time the request for extra peremptory challenges was made, a lawsuit was pending against one Defendant by the employee of another Defendant as a result of the same accident. The parties were represented by different counsel, and the pleadings, including the pre-trial conference order, reflect that Plaintiff alleged separate acts of negligence against each Defendant that combined to cause her injury. Further, each Defendant alleged the other's negligence as causing the accident, meaning that a finding of greater liability by one Defendant would likely reduce the potential liability of the other. The combination of these factors is sufficient to support the allowance of supernumerary challenges to Defendants, and does not reflect an abuse of discretion. *See Webster v. Lipsey*, 787 S.W.2d 631, 638–39 (Tex.Ct.App. 1990); *Hilyer v. Hole*, 114 Mich.App. 38, 318 N.W.2d 598, 601–02 (Ct.App.1982); *Roberts v. Taylor*, 339 S.W.2d 653, 655–56 (Ky.Ct. App.1960).

¶ 16 "Fundamental error" has been described by the Supreme Court as being "not subject to precise definition," but generally is such error as would "render a judgment void." *Meadows v. Meadows*, 1980 OK 158, ¶ 7, 619 P.2d 598, 601. Based on the record presented, we do not find fundamental error in the trial court's decision to allow extra peremptory challenges to Defendants. Therefore, we reject Plaintiff's argument on this issue.

*Rebuttal Evidence*

¶ 17 Plaintiff also alleges error in the trial court's refusal to allow her to call an accident reconstruction expert as a rebuttal witness. As noted above, Plaintiff's request to present the expert came after all parties had rested. Plaintiff had not listed the proposed witness in the pre-trial conference order or otherwise in discovery. Plaintiff made an offer of proof to the effect that her expert would testify, in particular, concerning certain time estimates utilized by the defense expert, Painter, in reaching his conclusions.

¶ 18 Defendants argue the testimony offered by Plaintiff's expert was not true "rebuttal" evidence but was evidence relevant to the issue of causation that Plaintiff should have offered in her case-in-chief. Plaintiff argues the expert's testimony was proper rebuttal evidence because she was not obliged to present more than a "prima facie"

case in her case-in-chief, and she had done that, as evidenced by the trial court's denial of Defendants' request for dismissal after Plaintiff rested.

¶ 19 A trial court's ruling on a party's request to present rebuttal evidence is discretionary and is not reversible error on appeal in the absence of a showing of clear abuse of discretion. *Swyden v. Killiam,* 1975 OK 12, ¶ 19, 531 P.2d 1031, 1035. "The term 'discretion' denotes the absence of a hard and fast rule and, when it is invoked as a guide to judicial action, means 'sound discretion'; this is held to mean a discretion not exercised willfully or arbitrarily, but with a regard to what is right and equitable under the circumstances." *Stewart v. Oklahoma Tax Comm'n,* 1946 OK 132, ¶ 14, 168 P.2d 125, 128. What constitutes "abuse of discretion" in a particular matter depends upon the circumstances and the law surrounding each case. *Id.* at ¶ 15, 168 P.2d at 129.

¶ 20 In the conduct of a trial, "[i]t is the duty of the plaintiff to present all of his evidence to make out his case in chief before resting, and it is not permissible to permit the plaintiff to introduce a portion of his evidence in chief and then to wait to see what the evidence on the part of the defendant is before introducing the rest of his evidence." *Poppy v. Duggan,* 1925 OK 263, ¶ 6, 235 P. 165, 166. Rebuttal evidence is evidence that becomes relevant only as an effect of some evidence introduced by the other side, *id.,* but does not include "testimony whose purpose is to contradict an *expected* and *anticipated* portion of the opponent's case in chief." *State ex rel. Okla. Bar Ass'n v. Busch,* 1998 OK 103, ¶ 15, 976 P.2d 38, 45.

¶ 21 The defense evidence that Plaintiff wished to rebut with an accident reconstruction expert was not such evidence as could reasonably be called "surprise" evidence, or evidence Plaintiff should not have expected and anticipated. Painter's testimony went primarily to the element of causation, and it is obvious from his trial testimony that certain time estimates and calculations were integral to his opinion. These are matters that undoubtedly would have been covered in a pre-trial deposition had Plaintiff chosen to take one. There is no explanation in the record for Plaintiff's failure to take Painter's deposition or to obtain a written description of any testimony Painter was expected to give. Given the conflicting versions by Plaintiff, Defendants, and the other witnesses of the events leading to the accident, Plaintiff's expert's opinion cannot be considered true rebuttal evidence. Painter's testimony was simply evidence, which, by virtue of choosing not to depose Painter, Plaintiff was unprepared to refute.

¶ 22 Furthermore, even if Plaintiff's evidence were properly characterized as rebuttal, the trial judge's refusal to allow it was warranted in this instance. A primary purpose of the Oklahoma Discovery Code is to promote the "just, speedy and inexpensive determination of every action," 12 O.S.2001 § 3225, while modern discovery practice seeks to "promote the discovery of the true facts and circumstances ... rather than to aid in their concealment." *City of Edmond v. Parr,* 1978 OK 70, ¶ 7, 587 P.2d 56, 57. Similarly, the purpose of conducting a pretrial conference and listing witnesses in a pre-trial order is to assist in the orderly administration of a trial and to prevent surprise testimony. *Middlebrook v. Imler, Tenny & Kugler,* 1985 OK 66, ¶ 23, 713 P.2d 572, 582.

¶ 23 Not only is the classification of Plaintiff's proferred evidence as rebuttal evidence questionable, but Plaintiff's argument to allow it is contrary to both the letter and the spirit of Oklahoma's discovery and other pretrial procedures described above. We reject Plaintiff's argument that the trial court abused its discretion by refusing to allow her to present her rebuttal witness under these facts.

¶ 24 The trial court's judgment is therefore AFFIRMED.

REIF, C.J., and STUBBLEFIELD, J., concur.