2008 OK CIV APP 105

David Allen TULL, as conservator of Aaron Michael Harness, and Aaron Michael Harness, Plaintiffs/Appellants,

v.

FEDERAL EXPRESS CORPORATION, and Bennie Joe Stowers, III, Defendants/Appellees.

No. 103,642.

Court of Civil Appeals of Oklahoma, Division No. 2.

April 21, 2008.

Rehearing Denied May 27, 2008.

Certiorari Denied Nov. 24, 2008.

Joseph F. Bufogle, Joe H. Witherspoon, Bufogle and Associates, Tulsa, OK, for Plaintiffs/Appellants.

John R. Woodard, Curtis J. Roberts, Joseph R. Farris, Feldman, Franden, Woodard, Farris, & Boudreaux, Tulsa, OK, for Defendants/Appellees.

JANE P. WISEMAN, Judge.

¶1 Appellants David Allen Tull and Aaron Michael Harness appeal from an order of the trial court upon jury verdict granting judgment in favor of Appellees Federal Express Corporation (FedEx) and Bennie Joe Stowers, III (Stowers). The primary issue on appeal is whether the trial court abused its discretion when it allowed Appellees to show the jury a computer animation portraying the accident at issue during Appellees' expert witness' testimony. We find that the trial court did not abuse its discretion and affirm its decision.[1]

## FACTS AND PROCEDURAL BACKGROUND

¶2 On November 17, 2003, a school bus rear-ended a car driven by Lisa Hauptmann. The force of the collision pushed Hauptmann's car into oncoming traffic where a FedEx van or truck driven by Stowers collided with Hauptmann's car. Hauptmann was killed in the accident, and her son Aaron Harness, a passenger in the vehicle, was severely injured in the accident.

¶3 Lisa Hauptmann's husband, Russell Hauptmann, brought a lawsuit in his capacity as personal representative of Lisa's estate against Independent School District No. 1 of Tulsa County, FedEx, and Stowers. Aaron Harness was also named as a plaintiff in the action. David Tull later filed a petition as parent and next friend and conservator of Harness.

¶4 Scheduling orders setting deadlines were entered, and a trial date was set for June 19, 2006. The parties were to exchange exhibits on June 13, 2006. On June 13, Appellees delivered to Appellants a computer-generated animation of the accident. Appellants claim that at no time before June 13 did Appellees indicate that they would produce or introduce a computer-generated animation. On June 15, 2006, Russell Hauptmann filed an objection to the animation, described as "Defendant's Demonstrative exhibit No. 1." Russell Hauptmann claimed that the plaintiffs presented to Appellees on March 29, 2006, the video animation conducted by their own expert witness, a date which was before the trial court's deadline of April 7, 2006, for "Daubert and 702 Motion[s]." He asserted that he was

---

1. Appellees' motion to dismiss this appeal is denied.

extremely prejudiced by the last minute addition of Appellees' animation exhibit and challenged Appellees' characterization of the exhibit as demonstrative.

¶ 5 On Thursday, June 15, Appellants also filed "motions in limine and to strike evidence of defendants" in which they claimed that they informed Appellees in October 2005 "that they intended to introduce an animation of the vehicle movements during the accident, showing various speed scenarios" and showed Appellees a rough draft of the video. Appellants claim that at the deposition of Appellees' expert, Robert Painter, he stated that he had not prepared an animation. Appellants produced their animation to Appellees on March 29, 2006, and they offered to make their expert, Dr. Bernard Richards, available for deposition. Appellants claim that the trial court set April 7, 2006, as the "deadline for *Daubert* challenges to this type of evidence."

¶ 6 A pretrial conference was held on May 23, 2006, and Appellees indicated that the evidence to be introduced by Painter consisted of "[c]harts, graphs, reports, and other materials of expert Robert Painter," but Appellees did not list any animated materials. Appellants claimed that they were substantially prejudiced by the last-minute production of the animation because (1) they had insufficient time to arrange for their own "sophisticated video recreation" within the discovery schedule; (2) the late production of Appellees' animation did not give them time to analyze the animation properly; and (3) the late production of the animation evaded the court's scheduling of *Daubert* hearings. Additionally, Appellants claimed that the animation is an item of evidence and not a demonstrative aid.

¶ 7 Appellants asserted that they were unfairly prejudiced by the Appellees' production of the animation, but did not file a motion for continuance. Appellees claimed that they did not need to include the animation on the exhibit list because it was not an exhibit to be offered into evidence, but merely a demonstrative aid.

¶ 8 The hearing on the motion in limine and motion to strike was held on Monday, June 19, the day the jury trial began. The trial court took the issue of the animation under advisement until it was presented at trial. The pretrial conference order was signed June 19 but was not filed until June 21, after the start of the jury trial.

¶ 9 Appellants' expert witness was Dr. Bernard Richards, a physics professor at Kent State University. In his testimony, Dr. Richards offered his opinion on how the accident occurred and offered an animation which showed that, if Stowers had been going more slowly, the impact with Hauptmann would not have occurred.

¶ 10 Appellees' expert, Robert Painter, a motor vehicle reconstruction specialist, testified that he had worked in the field for 38 years. Appellees first contacted Painter in February 2005. Painter went to the scene and used an infrared laser transit to reproduce the scene. Painter stated that "the laser transit is fair and accurate, almost as accurate as you can get in terms of reproducing the scene." Painter explained that the laser transit "takes this data that it collects in a data collector and then we create a file and then that in turn is put into a software that produces a diagram of the scene using two-dimensional form or a bird's-eye view as you're looking down on it." Painter also testified that he looked at both the Hauptmann vehicle and the FedEx truck and measured crush damage. He also looked at the school bus, although it had already been repaired. He examined the depositions that had been taken in the case and the officer's accident report.

¶ 11 Painter testified that the school "bus was going a little over 41 miles per hour at the point that it applied its brakes, and then at impact ... the speed was a little over 30 miles per hour." Painter testified that the time from the point of first impact between the bus and Hauptmann's vehicle and the second impact with the FedEx truck was less than 1.5 seconds. Painter believed that Stowers did not apply the brakes "all the way through" and "did not have the brakes locked up." He estimated that there was 50 percent braking. Responding to the Stowers' account that he had braked before impact, Painter stated, "... he wanted to put

his foot on the brake, that's his thought process, as anybody would do under the circumstances like this." However, Painter concluded that Stowers may have been able to get his foot on the brake, but due to forces within the vehicle, he could not have kept his foot on the brake during the accident.

¶ 12 Painter denied Appellants' assertion that Stowers would not have hit Hauptmann's vehicle if he had been driving more slowly. Painter testified that Richards' animation was not correct because the Hauptmann vehicle still would not have rotated out of the way in time to miss the impact. Also, Richards' animation showed that Hauptmann's vehicle would have traveled up over the curb if Stowers had been driving at a reduced speed. Painter testified that Hauptmann's vehicle would not have gone over the curb at the rate of speed at which she was traveling.

¶ 13 Painter testified that the speed of the FedEx vehicle made no difference because its speed was not the cause of the accident. He concluded that Stowers' speed had nothing to do with the cause of the accident, stating, "The cause of the accident is the school bus hitting the rear of the car, knocking it over into [Stowers'] path, that's the cause of the accident."

¶ 14 The computer-generated animation presented by Painter was prepared using software called 3D Studio. Painter testified that he put the data from the infrared laser transit into the program and created the animation. The animation showed a bird's-eye view of the accident and a view from inside the FedEx truck. Appellants objected to the animation, claiming that the animation did not take into account information given by Stowers regarding his braking. Stowers testified that he applied the brakes before impact. The animation does not depict Stowers braking before impact even though Stowers testified that he did apply the brakes.

¶ 15 During *voir dire* examination of Painter outside the jury's presence, Painter stated that "... what the demonstrative aid was for was to demonstrate the timing involved that a person inside the van would experience from the first impact to the second impact." The trial court allowed Painter to use the animation as a demonstrative aid. The trial court stated, "Ladies and gentlemen, this will be admitted for the purpose of demonstration only, it will not be submitted to you during your deliberations." The court marked the aid as "Court's Exhibit No. 1."

¶ 16 After the animation was played for the jury, Painter testified, "Well, it happened so quick. You have the vehicle stopped, the impact occurs, and then the vehicle rotates and is struck by the FedEx vehicle." Painter testified that the animation was consistent with his calculations, the Hauptmann vehicle's skid marks, and the relative speeds he calculated. Painter testified that Stowers had 1.46 seconds to recognize and react to the danger.

¶ 17 The jury found in favor of FedEx and Stowers. Appellants appeal asserting that the trial court erred in allowing Appellees to use the computer animation at trial.

## STANDARD OF REVIEW

¶ 18 Questions involving the "relevance and admission of evidence are matters addressed to the sound discretion of the Court, whose rulings thereon will not be disturbed absent a showing of abuse of discretion." *American Nat'l Bank & Trust Co. of Sapulpa v. BIC Corp.*, 1994 OK CIV APP 70, n. 17, 880 P.2d 420, 424.

## ANALYSIS

¶ 19 To determine if the trial court abused its discretion in allowing the computer animation to be shown at trial, we must first determine for what purpose Appellees used the animation. Specifically, we must determine whether the animation was a demonstrative aid as advanced by Appellees.

¶ 20 A computer-generated animation can be used in two ways, demonstratively or substantively. Dean A. Morande, *A Class of Their Own: Model Procedural Rules and Evidentiary Evaluation of Computer–Generated "Animations"*, 61 U. Miami L.Rev. 1069, 1071–72 (2007). If an animation is used for demonstrative purposes, it is usually referred to as an animation, but if it is used as substantive evidence it is often referred to as

a simulation. *Id.* at 1072. "A computer animation is purely demonstrative when used to illustrate a witness's testimony." *Id.* "A simulation, rather than mirroring a witness's testimony, forms a conclusion based on raw data and is substantive evidence in and of itself." *Id.* In an accident recreation simulation, "the computer functions in a sense as an expert itself, rendering its own opinion based on internal calculations of how the accident would have occurred." *Id.* at 1073. The most commonly used method to introduce a computer-generated animation or simulation is to illustrate the testimony of an expert witness. *Id.* at 1079.

¶ 21 The difference between a simulation and an animation "has more to do with its respective use and application, rather than with what it actually looks like on screen." *Id.* at 1074. An animation can be thought of as a series of diagrams that have been strung together to produce a moving image. *Id.* at 1085. Dean A. Morande explains, "An animation may not utilize a program that employs formulas to draw conclusions about material issues which would, if allowed into evidence, only be admissible through qualified expert testimony. *The program may reflect the opinions of qualified experts, but may not be used to generate those opinions.*" *Id.* at 1085 (emphasis added). On the other hand, a simulation is substantive evidence because it "utilizes one or more programs which, after inputting data, use scientific formulas to produce conclusions based on that data regarding issues material to the trial." *Id.* A simulation is akin to expert testimony. *Id.*

¶ 22 In the present case, the computer-generated animation did not represent any substantive addition to Painter's testimony. The animation depicted the time lapse between the bus hitting Hauptmann's vehicle and Stowers' truck hitting Hauptmann's vehicle. He testified about the amount of time Stowers had to respond to the danger presented, and the animation was a visual demonstration of the conclusions he reached, specifically that Stowers had 1.46 seconds to react to the vehicle in his path. The computer animation at issue was admitted as an illustration of Painter's opinion on the time

Stowers had to respond to the danger confronting him, *i.e.,* the time that elapsed between the two impacts. The animation was not admitted as substantive evidence, but as an aid to help the jury understand Painter's testimony. We therefore conclude that the computer-generated animation was a demonstrative aid, not a simulation.

¶ 23 Appellants argue that the animation is not a fair and accurate representation of the accident because it did not provide for pre-impact braking by Stowers. Appellants note that Stowers testified that he braked. Painter, however, specifically testified in regard to accident reconstruction principles in the area of braking and gave his expert opinion on the lack of braking. He agreed with the investigating officer that there was no physical evidence of braking by Stowers before impact. His testimony adequately explained the lack of braking depicted in the animation of the accident. In short, the animation illustrated Painter's opinion on the time lapse question, and Painter provided expert testimony to support why the animation was inconsistent with Stowers' testimony.

¶ 24 The next issue we must address is whether the use of computer-generated animations as demonstrative aids is consistent with Oklahoma law. In *Lawson v. National Steel Erectors Corp.,* 2000 OK CIV APP 69, 8 P.3d 171, the Court of Civil Appeals concluded that a trial court did not commit reversible error when it allowed the admission of a computer-animated video. The Court concluded "that an 'animation as illustrative of the expert's testimonial theory of the accident' is properly admissible." *Id.* at ¶ 33, 8 P.3d at 179 (quoting *Robinson v. Missouri Pac. R.R. Co.,* 16 F.3d 1083, 1087 (10th Cir.1994)). The issue of computer-generated re-enactments, however, has not been fully analyzed in civil cases in Oklahoma.

¶ 25 The Oklahoma Court of Criminal Appeals has provided an in-depth analysis of the admissibility of computer-animated re-enactments. In *Harris v. State,* 2000 OK CR 20, 13 P.3d 489, the expert witness for the prosecution used in his testimony a computer animation of the trajectory of a bullet passing through a victim's body. The Court concluded that the video and the computer-generat-

ed animation were "properly categorized as illustrative or demonstrative aids used to explain the expert's testimony, because they merely give visual meaning and definition to the testimony." *Id.* at ¶ 18, 13 P.3d at 495. The Court offered the following guidelines for trial court use when deciding whether reenactments should be utilized:

In order for a video or computer crime scene reenactment to be seen by a jury, as an aid to illustrate an experts [*sic*] witness' testimony, the court should require (1) that it be authenticated—the trial court should determine that it is a correct representation of the object portrayed, or that it is a fair and accurate representation of the evidence to which it relates, (2) that it is relevant, and (3) that its probative value is not "substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, needless presentation of cumulative evidence, or unfair and harmful surprise." *See* 12 O.S.1991, §§ 2401–2403, 2901.

*Id.* at ¶ 16, 13 P.3d at 495. The Court further held that the trial court should instruct the jury at the time the animation is shown that "the exhibition represents only a recreation of the proponent's version of the event; that it should in no way be viewed as an actual recreation of the crime, and like all evidence, it may be accepted or rejected in whole or in part." *Id.* at ¶ 17, 13 P.3d at 495.

¶ 26 A trial court must also ensure that the opposing party is given the opportunity before trial to examine the animation. *Id.* "The trial court should also mark the video reenactment as a court's exhibit so that the record may be preserved." *Id.* The court noted that "expert testimony can be very confusing" and concluded that the animation and video at issue "cleared up the confusion and made the expert's testimony easier to understand." *Id.* at ¶ 26, 13 P.3d at 496.

¶ 27 In *Dunkle v. State*, 2006 OK CR 29, 139 P.3d 228, a defendant also challenged the State's use of computer-generated animations to show that the defendant's version of a shooting was inconsistent with the evidence. The trial court found that the reenactments at issue were merely demonstrative aids and overruled the defendant's objec-

tions. On appeal, the Court of Criminal Appeals noted that the victim only had one bullet wound, the bullet did not pass through any solid surface other than the victim's body, and the bullet was never found. *Id.* at ¶ 58, 139 P.3d at 248. The expert "had no objective physical evidence from which to determine the position of the victim's body, at the time of the shooting, in relation to some other known point or surface." *Id.* The Court found that the use of the animations was inappropriate and misleading and that the data, including physical evidence, the crime scene analysis, and the defendant's statements, did not support the computer animations. *Id.* at ¶¶ 64–65, 139 P.3d at 249–50. The Court concluded, "Because the animations were not fairly representative of the evidence in the case, they were not relevant." *Id.* at ¶ 69, 139 P.3d at 251.

¶ 28 The *Dunkle* Court also noted that the trial court had failed to instruct the jury on how to understand and evaluate the animations. *Id.* at ¶ 71, 139 P.3d at 251. The Court then set out an instruction to be used for re-enactment evidence, OUJI CR 9–46, which provides:

The State/The defendant is about to present evidence in the form of a video/computer animation/[other], which is intended to help illustrate certain testimony or evidence being presented to you. The exhibit being presented is not an actual recording or video of the event that is shown. Rather, the exhibit is offered simply as a "reenactment" of what may have occurred. The exhibit is intended to help you better understand the State's/ defendant's position about how an event occurred (or did not occur) and that party's understanding of the evidence supporting this interpretation. The exhibit is intended to assist you in your role as jurors, and like all evidence, it may be accepted or rejected by you, in whole or in part.

¶ 29 We find that the computer animation at issue here is a demonstrative aid only and was not used as substantive evidence as a trial exhibit. We conclude that it does not appear that the use of such computer-generated demonstrative aids is contrary to Okla-

homa law, especially if certain precautions are taken.

¶ 30 Applying the guidelines set out in *Harris* and *Dunkle* as a template for our analysis, we find that this animation was properly shown as a demonstrative aid. As to the guidelines set out in *Harris,* we first conclude that the animation was an accurate depiction of Painter's analysis and conclusions. Painter explained any inconsistencies with Stowers' previous testimony regarding braking, and the animation was relevant on the issue of how long Stowers had to react to the danger unfolding in front of him. Additionally, as discussed below and despite Appellants' arguments to the contrary, we find that there was no unfair surprise and that the probative value of the animation was not substantially outweighed by the danger of unfair prejudice.

¶ 31 The *Dunkle* court held that an instruction must be given to the jury to help the jury understand the nature of the animation. Although the trial court here did not use the exact instruction used in criminal trials, the trial court did inform the jury that the animation was admitted for the purpose of demonstration only. The court did not allow the animation to be used by the jury during deliberations. We conclude that the trial court properly allowed Appellees to use the animation at trial as a demonstrative aid.

¶ 32 We further find that Appellants have failed to show that they were somehow prejudiced or unfairly surprised by the animation. Appellants contend that Appellees did not give them enough time to review the animation before trial. However, Appellees gave Appellants the animation on the day set by the trial court to exchange exhibits, even though Appellees claimed it was not a trial exhibit and was only to be used to aid the jury in understanding Painter's testimony. Appellants had taken Painter's deposition and knew what his opinions were and the factual bases on which he relied to reach those conclusions. At trial, Painter testified without objection that the animation did not contain any facts, opinions, or conclusions that were not previously discussed by him at his deposition taken by counsel for Appellants.

¶ 33 Rule 5 of the Rules for District Courts of Oklahoma, 12 O.S.2001 Ch. 2, App., provides the procedure for pretrial proceedings. "[T]he purpose of conducting a pretrial conference and listing witnesses in a pre-trial order is to assist in the orderly administration of a trial and to prevent surprise testimony." *Osborne v. Mollman Water Conditioning, Inc.,* 2003 OK CIV APP 20, ¶ 22, 65 P.3d 632, 638. Under Rule 5(H), "Any final pretrial conference shall be held as close to the time of trial as is reasonable under the circumstances." Subsection (I) provides, "After any conference held pursuant to this rule, an order shall be entered reciting the action taken. This order shall control subsequent course of the action unless modified by a subsequent order."

¶ 34 The final pretrial conference in this case was held the day the trial started. At the time of the final pretrial conference, Appellants knew of the existence of the animation. Although Appellees had not specifically listed an animation during prior pretrial proceedings, Appellees had indicated in May 2006 that Painter would use charts, graphs, reports, and other materials during his testimony.

¶ 35 In *Martinez v. Moffat,* 1994 OK CIV APP 133, 890 P.2d 988, the appellants alleged that the appellee was allowed to introduce exhibits and testimony from an accident reconstruction expert without having informed them about the exhibits and testimony before trial. The appellants also claimed that the expert witness' exhibits were not listed in the pretrial order. The pretrial order did, however, list "demonstrative aids." The Court of Appeals concluded that the trial court did not err in allowing the expert to use two charts which were graphic representations of the expert witness' opinion about whether a driver had sufficient time to stop the car had she applied her brakes. The Court stated, "A demonstrative aid does help the fact-finder understand verbal evidence." *Id.* at ¶ 8, 890 P.2d at 991.

¶ 36 The trial court here committed no error in allowing the use of the animation as a demonstrative aid. Having deposed Painter previously, Appellants knew his opinion

and the factual basis on which he relied, and the animation presented nothing new in this regard. Knowing of the animation before trial and that Appellees were seeking its use before the jury as a demonstrative aid, Appellants did not ask for a continuance to further prepare for its use at trial.

¶ 37 Further, we fail to see how Appellants were prejudiced by the use of the animation. The animation helped convey the expert's testimony to the jury. We conclude that the animation was properly categorized as a demonstrative aid used to illustrate and explain the expert's testimony by giving it visual meaning and definition. In their expert's testimony, Appellants introduced their own animation as an exhibit and also used another demonstrative aid at trial. There is no indication that Appellees' animation misled the jury or that Appellants were surprised by the animation's content. Because Painter testified to the facts underlying the animation, it would appear that the contents of the animation alone did not put Appellants in a worse position than they would have been had the animation not been shown. With no showing of prejudice to Appellants, we find no basis on which to conclude that the probative value of the animation was outweighed by its prejudicial effect.

█ ¶ 38 For future guidance in the use of animations as demonstrative aids, the trial court should instruct the jury, at the time the animation is offered and allowed as a demonstrative aid and before it is shown to the jury, that (1) the animation is not evidence[2] but is intended only as a visual aid to the jury in understanding certain testimony or evidence presented at trial by illustrating and explaining that testimony or evidence, (2) the animation represents only a re-creation of the proponent's version of the event and should in no way be viewed as an actual re-creation or recording of the event, and (3) because the animation is intended to assist them as jurors, it may be accepted or rejected in whole or in part. When used only as a demonstrative aid and not as an exhibit admitted into evidence, the animation should be marked as a demonstrative exhibit of the

proponent[3] and included as part of the trial court record but should not be sent to the jury deliberation room with the jury.

¶ 39 We additionally note that Appellants also seek reversal of the trial court's allowance of costs to Appellees under 12 O.S.2001 § 942. None of the parties briefed this issue on appeal. Because we find no error requiring reversal of the judgment in Appellees' favor, the award of costs is also affirmed.

### CONCLUSION

¶ 40 We find that Appellants failed to show that the trial court abused its discretion in allowing Appellees to use a computer-generated animation as a demonstrative aid at trial to illustrate an expert witness' testimony. We further find no error in the trial court's conduct of pretrial proceedings or its award of costs. Accordingly, we affirm the decisions of the trial court.

¶ 41 **AFFIRMED.**

GOODMAN, P.J., and FISCHER, J., concur.

---

**2.** This differs from OUJI 9–46 which characterizes such "reenactments" as evidence which, "like all evidence, ... may be accepted or rejected by you in whole or in part."

**3.** Although the trial court marked the animation as a "Court's Exhibit" (perhaps following the

committee comment to OUJI CR 9–46 which specifies that it should be marked as a "court's exhibit"), we find no reversible error in so doing, but suggest the more appropriate procedure is to identify it by its sponsor to avoid confusion in the record.